ENGLEWOOD HOSPITAL ASSOCIATION, Plaintiff-Appellee, v. OPHELIA KNOX, Defendant-Appellant.—(ARIS PRODUCTS COMPANY, INC., Defendant-Appellee.)

First District (5th Division)   No. 62678

■■■■

Opinion filed June 3, 1977.

Allen L. Ray, James D. Biggs, Maureen T. Thornton, and Lillian O. Johnson, all of Chicago, for appellant.

No briefs filed for appellees.

William J. Scott, Attorney General, of Chicago (Thomas C. Broderick, Assistant Attorney General, of counsel), for *amicus curiae* Illinois Department of Public Aid.

Mr. JUSTICE MEJDA delivered the opinion of the court:
■■ Defendant, Ophelia Knox, appealed from an order of the circuit court denying her motion for a turnover to her of monies received by

plaintiff, Englewood Hospital Association, from a garnishment proceeding against her employer, Aris Products Company, Inc. (Aris). Thereafter, oral arguments were heard in this court and an opinion was filed. However, defendant filed a timely petition for rehearing which was granted. (Ill. Rev. Stat. 1975, ch. 110A, par. 367.) Subsequently, the Illinois Department of Public Aid (IDPA) appeared and filed a brief as *amicus curiae*, to which defendant has filed a responsive brief. The rehearing has come before a panel of justices other than the participants in the original opinion. No restrictions were imposed upon the granting of rehearing. Therefore, the appeal comes up for consideration as though no prior opinion had been filed, and this court may make such determination as may be deemed proper at this time. *Colesar v. Star Coal Co.* (1912), 255 Ill. 532, 99 N.E. 709; *Bergman v. Board of Education* (1961), 30 Ill. App. 2d 65, 173 N.E.2d 565.

Defendant contends that as a welfare recipient the wages from her separate employment were not subject to garnishment. We disagree and therefore affirm the order of the trial court.

Defendant was a recipient of public assistance for a number of years for herself and her children from IDPA pursuant to article IV of the Illinois Public Aid Code. (Ill. Rev. Stat. 1975, ch. 23, pars. 1—1 through 13—5.) She had also been simultaneously employed for two years when a garnishment proceeding in the form of an affidavit for a wage deduction order was instituted against Aris by plaintiff to collect a default judgment it had previously obtained against defendant.

In its answer to the garnishment interrogatories, Aris stated that when it received the wage deduction summons it owed defendant wages for the five-week period from April 28, 1975, to June 6, 1975, in the amount of $1110.24. After applying the statutory exemption of 85% (Ill. Rev. Stat. 1975, ch. 62, par. 73), a wage deduction order was entered against Aris for the balance of $166.54. The wages were deducted and a satisfaction of judgment was filed by plaintiff.

Defendant then filed a motion to vacate the judgment in the garnishment action, to dismiss that proceeding, and for the entry of an order requiring plaintiff to turn over to her the amount it received in the garnishment action. The motion was denied, and in this appeal therefrom defendant seeks reversal on the sole ground that her wages were exempt from garnishment.

OPINION

Preliminarily, we note that plaintiff-appellee has failed to appear or file a brief here. However, this case presents a question of first impression which we believe requires consideration on its merits. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345

N.E.2d 493; *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 254 N.E.2d 814.

Defendant was receiving her assistance under the Aid to Families with Dependent Children Program (AFDC) established under Title IV of the Social Security Act of 1935, as amended. (42 U.S.C. §§601-660 (1970 & Supp. V 1975).) The Federal act and regulations provide that, in determining need, the State must take into consideration other income and resources available to the recipient (42 U.S.C. §602(a)(7) (Supp. V 1975); 45 C.F.R. §§233.20(a)(3)(ii)(A) and (D) (1976)), and that the first $30 of the total gross monthly earned income and one-third of the remainder are to be disregarded. (42 U.S.C. §602(a)(8)(A)(ii) (Supp. V 1975); 45 C.F.R. §233.20(a)(11)(ii)(b) (1976).) Illinois has adopted these provisions in its administration of AFDC. Ill. Rev. Stat. 1975, ch. 23, par. 4—1.6, and Ill. Dep't. of Public Aid (AFDC), Categorical Assistance Manual, PO-510 (January 1975) (hereinafter cited Categorical Assistance Manual).

The Illinois Public Aid Code (Ill. Rev. Stat. 1975, ch. 23, par. 1—1 through 13—5) which provides for AFDC benefits in article IV (paragraphs 4—1 through 4—11) in pertinent part further states:

"§2—6. 'Financial Aide [is defined as]': a money or vendor payment to or in behalf of a recipient for basic maintenance support or medical assistance provided under Articles III, IV, V, VI and VII."

"§11—3. Financial Aid Inalienable.)

All financial aid given under Articles * * * IV * * * shall be absolutely inalienable by assignment, sale, attachment, garnishment, or otherwise."

Defendant received wages from her employer and assistance payments from IDPA. Section 11—3 plainly states that it is the *financial aid* provided under article IV which is not subject to garnishment. Clearly, the wages or earned income of a recipient are not within the money payments made by IDPA pursuant to article IV.

Nonetheless, defendant's contention here, that her wages were exempt from garnishment, is based principally on her argument that the wage garnishment decreased the amount of her "available income" considered by IDPA in determining her basic needs, and, as a result, she claims IDPA will be required to increase her assistance to replace that decrease. By reason thereof, she argues that the wage deduction was in effect the garnishment of her public assistance, and therefore prohibited by the above section 11—3.

■■ It is her position here, as it was in the trial court, that "when her available income decreases, regardless of the reason, IDPA is under a statutory duty to promptly increase their financial aid to her family

accordingly." Thus, it was her initial burden in the trial court to establish that IDPA was required to increase her assistance when the wage deduction was made. The trial court apparently found that she did not meet this burden, and we agree.

Defendant cites no statutory or regulatory provision which specifically requires an increase under the circumstances here. She merely asserts such a duty and, in support thereof, refers us to the following: 42 U.S.C. §602(a)(10) (Supp. V 1975), which requires that aid be furnished with reasonable promptness after eligibility is determined; 45 C.F.R. §205.10(a)(3) (1976), which provides for a notice in writing concerning the right to a hearing where a change is effected that might affect the claim of an applicant or a recipient; and the Categorical Assistance Manual, PO-805.3, PR-805.3, which requires a redetermination of eligibility for assistance when information is received concerning a possible change in a recipient's eligibility or the amount of assistance, or when a recipient reports a change of address. We believe those provisions do not support her position.

■■ Although 45 C.F.R. §233.20(a)(3)(ii)(D) (1976) requires, as defendant contends, that only income "available for current use" be considered in determining a recipient's grant, we note that this phrase is not further defined in the Federal statutes and that States are given broad discretion in administering the AFDC program. (See *Shea v. Vialpando* (1974), 416 U.S. 251, 40 L. Ed. 2d 120, 94 S. Ct. 1746.) Nonetheless, under this provision, States may not adopt conclusive presumptions which attribute income or resources to applicants or recipients which they in fact do not receive or benefit from (see, *e.g., Van Lare v. Hurley* (1975), 421 U.S. 338, 44 L. Ed. 2d 208, 95 S. Ct. 1741; *King v. Smith* (1968), 392 U.S. 309, 20 L. Ed. 2d 1118, 88 S. Ct. 2128), and neither may States presume the existence of income or resources without any factual basis for their existence. (*National Welfare Rights Organization v. Weinberger* (D.D.C. 1974), 377 F. Supp. 861.) However, it has been held that to qualify as a currently available resource under this regulation, "it need only be shown that regular payments made by third parties directly benefit an AFDC recipient in such a manner that they are actually used to defray expenses which such recipient would otherwise incur." (*Randall v. Goldmark* (1st Cir. 1974), 495 F.2d 356, 361, *cert. denied,* 419 U.S. 879, 42 L. Ed. 2d 119, 95 S. Ct. 144.) In the instant case there is no doubt that this income is current, and it is available "in the sense that such sums do actually reduce expenses for which plaintiff would otherwise be liable." (495 F.2d 356, 361.) Defendant can point to no specific Federal statute or regulation in support of her position, and we believe that the State may properly consider garnished wages as "currently available income" in determining an AFDC recipient's grant.

Defendant mistakenly attempts to equate "currently available income" with cash-in-hand. This position was expressly rejected in *Randall v. Goldmark*. However, in support of her contention defendant cites the Categorical Assistance Manual, PO-510, which states, in part:

> "Only, non-exempt income currently available to meet the client's needs is to be considered when determining eligibility for categorical assistance. Income, with the exception of unearned income in-kind, is considered available *to the extent and in the amount it is actually received* by the client." (Emphasis added.)

However, in the succeeding provisions of the manual, IDPA thereafter states that "[e]arned income is remuneration, in cash or in-kind, * * * derived through the receipt of wages, salary * * * as an employee" and that all of a recipient's earned income is to be considered in determining a client's needs, specifically excepting therefrom only certain specified employment income and work-related expenses. (Categorical Assistance Manual, PO-510.1, PR-501.1 and PR-615.) It is significant that wage deductions by garnishment or other legal methods are not encompassed by the exceptions there specified. These specific earned-income provisions militate against defendant's interpretation of PO-510. Garnishment is merely one method for a creditor to receive payment of just debts. It follows that irrespective of what method is used to discharge or settle such debt, whether garnishment or voluntary cash payments from earned wages of the debtor, the payment is made with income considered "currently available" for AFDC purposes. The instant case is factually distinguishable from *Kaufman v. Hicks* (1974), 17 Ill. App. 3d 274, 307 N.E.2d 615 (abstract), in which this court held that a bank account consisting *entirely* of public assistance disability benefits was not subject to involuntary alienation or garnishment under section 11—3 for even the most just purpose. Again, the funds here involved were not the "financial aid" or benefits provided by public funds.

Even assuming *arguendo* that the above phrase, "to the extent and in the amount it is actually received," requires that an AFDC recipient must directly and personally receive the wages from the employer before the wages may be considered in determining the ultimate grant, we then would have to ignore the purpose and function of garnishment. It is clearly a recognized legal procedure by a creditor to secure payment which directly benefits the AFDC recipient in defraying expenses which the recipient has voluntarily incurred. (*Randall v. Goldmark.*) To that extent the fund is nonetheless "currently available" for AFDC purposes. Furthermore, to hold the disregard portion of the wages exempt from garnishment for benefits voluntarily obtained would invite abuse by AFDC recipients. Recipients would become more dependent upon public assistance as opposed to developing self-support and personal

independence. It would encourage indebtedness to be incurred which either would be in fact transferred to and paid by IDPA through increased assistance upon garnishment or would be provided at the expense of the creditor if garnishment was not permitted. Neither result can reasonably be said to have been intended by IDPA in promulgating PO-510. It seems apparent to this court that whatever method is used to settle such debts, whether garnishment or voluntary cash payments, the income applied in payment is currently available for AFDC purposes.

Furthermore, the wage deduction in the instant case should not necessarily be considered as having been taken from funds required for basic maintenance, as defendant contends. In reality, the deduction could be considered as coming from the disregarded portion of her gross monthly wages which is not considered in determining her need; namely, the first $30 and one-third of the remainder. In view of the 85% exemption provided under the Garnishment Act, the amount of wages subject to garnishment would always be less than the total of the disregards. There are apparently no provisions in the Federal act or regulations which control the manner of expenditure by an employed recipient of that portion of gross income which is disregarded. Thus, it would appear to make no difference whether the individual used that money for a cash purchase of goods or services, or in payment of credit extended—which is, in effect, what defendant did here by allowing the wage deduction order instead of paying the debt directly. Defendant in fact received wages available for her use from her employer and which she did in fact use, albeit for paying her past due bill. The argument, that because the disregard portion of her wages has been garnished that IDPA is under a duty to replace the deduction by equivalent increase in her assistance, is without merit. See *Anderson v. Morris* (1976), 87 Wash. 2d 706, 558 P.2d 155; *Harris v. District of Columbia Department of Human Resources* (D.C. App. 1973), 304 A.2d 868.

■■ Defendant contends that allowing garnishment of the wages of an employed welfare recipient, when the check of an unemployed recipient is inalienable by statute, creates an impermissible distinction between a working and a nonworking AFDC recipient and amounts to a disincentive to work. She argues that this, in turn, frustrates the purposes of the federally mandated income disregard provisions. These provisions were deemed necessary by the United States Senate as an incentive for a recipient to take employment, on the theory that if all of the employment earnings were considered in determining need, the individual might not show any gain and, as a result, might not and probably would not seek employment. See Social Security Amendments of 1967, Sen. Rep. No. 744, U.S. Code Cong. & Ad. News 2994 (1967).

■■ We disagree with defendant's contention that garnishment of

disregarded funds would act as a disincentive to work. First, as noted previously, the total of disregarded income will *always* be more than the maximum statutorily allowable garnishment of 15%. Second, the AFDC regulations themselves provide incentive for recipients to continue or accept offers of employment, as indicated by the following:

"(b) The family earned income exemption is not allowed for one month if any person included in the assistance unit, other than a child:

Terminated his employment or reduced his earned income without good cause within the period of 30 days preceding such month, or Refused without good cause, within the period of 30 days preceding such month, to accept employment in which he is able to engage and which has been determined to be a bona fide offer of employment (see PO-1330.3)."

Categorical Assistance Manual, PO-510.1a3(b). See also 42 U.S.C. §§602(a)(8)(C)(i) and (ii) (Supp. V 1975), and 45 C.F.R. §§233.20(a)(11)(ii)(B)(1)(i) and (ii) (1976).

Defendant contends further, however, that since income disregards are not available to some classes of recipients, allowing garnishment would in these cases create a work disincentive, thus violating once again the congressional intent. She argues that as an example, the $30 plus one-third provision does not apply to applicants or reapplicants for AFDC unless the family received an AFDC payment for any one of the four preceding months. (Categorical Assistance Manual, PO-510.1a3(a). See also 42 U.S.C. §602(a)(8)(D) (Supp. V 1975); 45 C.F.R. §233.20(a)(11)(ii)(b)(2) (1976).) In addition, she urges that the Federal regulations make the $30 plus one-third exemption inapplicable to income from some public service employment. (45 C.F.R. §§233.20(a)(11)(iv) and (v) (1976).) However, these requirements that income disregards not be utilized in certain cases are applicable no matter how the person's income has been distributed, *e.g.*, voluntary debt payments, cash purchases for necessities, garnishment, wage assignments, or frivolous expenditures. Thus, the issue of garnishment is irrelevant to any work disincentive which might arise under such provisions. The work disincentive, if there is one, lies not in allowing garnishment in the instant type of case but in the Federal mandate disallowing the use of income disregards to the other classes of potential AFDC recipients.

We conclude that it was not the congressional intent to exempt the disregard income from garnishment. There is no provision in the Act so stating, and, furthermore, it would be unreasonably burdensome to require tradespeople to determine in advance whether each customer is a welfare recipient before extending credit, with the eventual result being

that welfare recipients might have considerable difficulty obtaining credit notwithstanding employment.

In view of the foregoing, the trial court properly denied defendant's motion to dismiss the garnishment proceedings and to order plaintiff to turn over to defendant the amount of the wage deduction. Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGLOON and WILSON, JJ., concur.