HINDERER v DEPARTMENT OF SOCIAL SERVICES

Docket No. 78-5015. Submitted June 19, 1979, at Lansing.—Decided March 4, 1980.

Paula M. Hinderer receives monthly benefits under the aid to families with dependent children program (AFDC). The dispensing authority, Department of Social Services, used a lag budgeting system (LBS) in making the monthly payments. Paula's needs were established at $295 per month. Her monthly payments varied under LBS. She had months during which she received more than $295 in benefits plus reported income and months in which the total funds she received fell well below $295 because of income she received earlier but, because of the lag system, she did not have during the grant period. Paula objects to this form of budgeting. She appeals from an order entered in Midland Circuit Court, David S. DeWitt, J., upholding the decision of an administrative law judge of the Department of Social Services. The court affirmed the law judge's determination that LBS was a proper method of computing benefit payments. Plaintiff appeals. On appeal plaintiff contends that because her benefit rate resulted in overpayments during certain periods and underpayments in other periods, LBS does not comply with Federal regulations regarding the current availability of income and that LBS does not conform to the Administrative Procedures Act. *Held:*

1. Only currently available resources may be properly considered in reducing AFDC monthly benefits; however, "currently available" does not necessarily mean in hand, readily liquidated or under control of the recipient. Therefore, the state agency could employ a lag payment budget system because the income received to defray monthly expenses is income which is currently available within the meaning of applicable statutes

REFERENCES FOR POINTS IN HEADNOTES

[1] 79 Am Jur 2d, Welfare Laws § 14.

[2] 79 Am Jur 2d, Welfare Laws § 7.

[3, 4] 79 Am Jur 2d, Welfare Laws §§ 19, 20.

[5] 79 Am Jur 2d, Welfare Laws § 9.

[6] 79 Am Jur 2d, Welfare Laws § 6 *et seq.*

and regulations. LBS is valid and such income can be properly utilized in reducing a recipient's AFDC grant in a subsequent payment month.

2. Plaintiff's contention that LBS punishes the needy child for parental mismanagement of funds and ignores the practical economic realities facing AFDC families is unpersuasive. A Department of Social Services regulation provides for supplemental payment where undue hardship is shown by a marked increase in current need by the recipient.

3. LBS is not subject to the Administrative Procedures Act.

Affirmed.

1. SOCIAL SERVICES — AID TO DEPENDENT CHILDREN — STATUTES.

Controlling Federal law requires that any state electing to participate in the aid to families with dependent children programs shall, upon determining that a family is eligible for benefits, furnish the same with reasonable promptness to all eligible individuals (42 USC 602[a][10]).

2. SOCIAL SERVICES — AID TO DEPENDENT CHILDREN — STATUTES.

Care and protection of needy dependent children is the overriding purpose of the aid to families with dependent children program (42 USC 601 *et seq.*).

3. SOCIAL SERVICES — AID TO DEPENDENT CHILDREN — AVAILABLE INCOME.

A state agency may properly consider only currently available income and resources in determining the needs of any child or relative claiming aid to families with dependent children and the amount of payments to or for them.

4. SOCIAL SERVICES — AID TO DEPENDENT CHILDREN — AVAILABLE INCOME — LAG PAYMENT PROGRAM — REDUCTION OF PAYMENTS.

Any reduction in monthly benefits to recipients of aid to families with dependent children must be based upon the currently available resources of the recipient; however, "currently available" does not necessarily mean in hand, readily liquidated or under control of the recipient; therefore, a state agency may employ a lag payment budget system because the income received to defray monthly expenses is income which constitutes currently available resources in the payment month within the meaning of the applicable statutes and regulations and such income can be utilized in reducing a recipient's benefits in a subsequent payment month.

5. Social Services — Aid to Dependent Children — Undue Hardship — Emergency Payments.

   A Department of Social Services regulation provides for a supplemental payment after issuance of the regular warrant to avoid undue hardship where a marked increase in current need is shown by a recipient of aid to families with dependent children.

6. Social Services — Aid to Dependent Children — Rules and Regulations — Lag Payment Program — Validity — Statutes.

   A three-month lag budget period by the Department of Social Services for the payment of benefits to recipients of aid to families with dependent children is not subject to the Administrative Procedures Act; the lag budget payment program is an agency policy of general applicability, affects the rights of the public, implements Federal and state statutory regulations and comports therewith (MCL 24.207, 400.14[1][b]; MSA 3.560[107], 16.414[1][b]).

Legal Services of Eastern Michigan (by *Ronald B. Eskin),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Janis Meija* and *R. Philip Brown,* Assistants Attorney General, for defendant.

Before: Cynar, P.J., and MacKenzie and L. W. Corkin,* JJ.

Cynar, P.J. Plaintiff appeals from an order entered in Midland County Circuit Court upholding the decision of an administrative law judge of the Michigan Department of Social Services. The order affirmed the administrative law judge's determination that the methods of budgeting employed by the Department of Social Services in computing Aid to Families with Dependent Children (AFDC) benefit payments was proper, as against plaintiff's

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

challenge that the budgeting procedure conflicted with certain provisions of the Federal Social Security Act[1] and the regulations enacted thereunder.

## I. *Facts*

This case involves AFDC benefits received by plaintiff for the months of April, 1977, through September, 1977. Plaintiff's needs were established by defendant at $295 per month, and plaintiff therefore became eligible to receive monthly AFDC payments in that amount. Defendant reduced such payments by any income earned by plaintiff over and above a so-called "earned income disregard" amount, defined in 42 USC 602(a)(8)(A). Both parties agree that the "earned income disregard" was properly computed in this case.

During the relevant time period, defendant used a lag budgeting system (LBS), sometimes labeled prior month budgeting or retrospective budgeting, in making the reductions from plaintiff's AFDC benefits. LBS involves a three-month period. The base month is the calendar month in which income is received by the AFDC recipient. The transaction month is the calendar month following the base month, in which the previously received income is reported to the caseworker and the budget adjusted accordingly. The payment month is the month following the transaction month. Income received in the base month is reflected by reducing the amount of the benefits received in the payment month. Thus, there is approximately a two-month lag between the time income is received by the AFDC recipient and when it is reflected in a reduced benefit payment.

Therein lies the nub of the controversy. Plaintiff had months during which she received more than $295 in benefits plus reported income, and months

---

[1] 42 USC 601 *et seq.*

in which the total funds she received fell below $295, directly as a result of LBS.[2] Plaintiff objects to this state of affairs, arguing that LBS does not comport with Federal requirements which permit reduction of AFDC benefits only by considering currently available resources. What constitutes currently available resources is at the core of this dispute.

II. *Currently Available Income*

Prefatorily, we note that what is *not* in issue in the instant case, contrary to plaintiff's contention, is the recoupment of a prior overpayment of benefits caused by administrative error. On this point we disagree with the case heavily relied on by plaintiff, *Garcia v Swoap*, 63 Cal App 3d 903; 134 Cal Rptr 137 (1976), *cert den* 436 US 930; 98 S Ct 2829; 56 L Ed 2d 775 (1978). Instead, the real concern is the *delay* in reflecting the receipt of income by the AFDC recipient in that recipient's assistance grant. The propriety of such delay in large measure turns upon the meaning to be attributed to the phrase "currently available resources".

---

[2] The following chart indicates plaintiff's total monthly income and benefits for the time in question. The broken lines indicate AFDC adjustments made as a result of income reported a month prior to the AFDC payment, and received two months prior thereto. The two numbers connected by each broken line total $295, with the exception of the last broken line, because no reduction was made from the October benefit payment for the income received in August, the last month plaintiff worked.

*Plaintiff's Total Monthly Income and Benefits*

| Month | 2/77 | 3/77 | 4/77 | 5/77 | 6/77 | 7/77 | 8/77 | 9/77 | 10/77 |
|---|---|---|---|---|---|---|---|---|---|
| Reported Income | $ 52 | $143 | $151 | $143 | $215 | $106 | $ 53 | $-0- | $-0- |
| AFDC Benefits | -0- | -0- | 243 | 152 | 144 | 152 | 80 | 189 | 295 |
| Monthly Total | N/A | N/A | $394 | $295 | $359 | $258 | $113 | $189 | $295 |

The first question for decision is therefore whether LBS, as in effect from April, 1977, through September, 1977, failed to comply with controlling state and Federal statutes and administrative regulations.

Controlling Federal law requires that any state electing to participate in the AFDC program shall, upon determining that a family is eligible for AFDC benefits, furnish the same with reasonable promptness to all eligible individuals. 42 USC 602(a)(10). This is consonant with the overriding purpose of the program, *i.e.,* encouraging the care of and maintaining protection of needy dependent children. 42 USC 601.

Plaintiff's position is that LBS failed to further this purpose, and, to the contrary, thwarted it because it reduced a recipient's grant by income which was no longer "in hand", having previously been spent. This, it is argued, punishes the needy child for parental mismanagement of funds and ignores the practical economic realities facing AFDC families. It is further claimed that LBS, as then in effect, did not provide any supplemental source of payments for a recipient who suffers undue hardship from a significant decrease in income in a single month and who would otherwise be without funds with which to meet "current" needs, and thereby LBS failed to comply with Federal requirements. Finally, plaintiff contends LBS may not be upheld solely because it promotes the integrity of the state fisc. Defendant, of course, takes exception to each of these propositions.

The notion of "currently available resources", which has engendered this controversy, is a product of Federal statute and administrative regulations. 42 USC 602(a)(7) provides in relevant portion:

"(a) A state plan * * * must * * *
                    * * *
"(7) * * * provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income:"

The administrative regulation promulgated thereunder reads as follows:

"(a) Requirements for State Plans: A State Plan for * * * AFDC * * * must, as specified below:
                    * * *
"(ii) Provide that, in determining need and the amount of the assistance payment, after all policies governing the reserves and allowances and disregard or setting aside of income and resources referred to in this section have been uniformly applied:
                    * * *
"(D) Net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance; * * *." 45 CFR 233.20(a)(3)(ii)(D).

Michigan has promulgated 1970-1971 AACS R 400.12(25), which adopts in the main the Federal regulation. The Michigan provision provides:

"(25) Only income and resources which are available in fact for current use are to be considered in determin-

ing the need of individuals for assistance and the amount of payments to or for them."

The mandate is clear. Only currently available resources may be properly considered in reducing AFDC benefits. What then is the definition of that phrase? Michigan appellate courts have not previously addressed this question.

However, we are not without guidance in deciding this question. In *Randall v Goldmark,* 495 F2d 356 (CA 1, 1974), a unanimous court rejected the recipient's argument that "currently available" meant "in hand, readily liquidated, or under the control of the individual". *Randall, supra,* at 361. Instead, the panel stated, albeit in dicta, that to qualify as a currently available resource, it need only be shown that regular payments made by third parties directly benefit an AFDC recipient in such a manner that they are actually used to defray expenses which such recipient would otherwise incur. A resource is available when the sum received actually reduces expenses for which the recipient would otherwise be liable. *Id.,* 361. Accord, *Schmidt v New Jersey Dep't of Institutions & Agencies,* 147 NJ Super 150; 470 A2d 892 (1977), *Englewood Hospital Association v Knox,* 49 Ill App 3d 515; 7 Ill Dec 367; 364 NE2d 528 (1977).

We note that the use of "regular" as a modifier of the word payments is no longer apropos, as the Federal regulation to which it was addressed no longer limits offsets to income received only on a regular basis, but allows reduction of benefits by income received sporadically. See 45 CFR 233.20(a)(3)(ii)(D) and former 45 CFR 233.20(a)(3)(ii)(C). With that lone excision from the definition as expounded in *Randall,* we adopt said language as the rule in Michigan. Accordingly, we conclude that the income received by plaintiff in

the base month under LBS, used by her to defray expenses, is income which constitutes a "currently available resource" in the payment month, within the meaning of the applicable statutes and regulations. It is therefore properly utilized in reducing a recipient's AFDC grant in the payment month. As such, we find no infirmity in LBS on this basis.

We likewise reject plaintiff's argument that LBS was defective in failing to include a provision for a supplemental source of benefits for a recipient who suffers a significant decrease in income in a particular month, as a result of the operation of LBS or otherwise, and thereby meets with undue hardship. Department of Social Services regulations issued prior to the implementation of LBS include such a supplemental payment program where a marked increase in current need is shown by the recipient, allowing a supplemental warrant to be issued to a recipient so affected after issuance of the regular warrant.

Therefore, insofar as plaintiff's challenges to the mechanics of LBS are concerned, we find no ground for invalidating the same, and conclude that LBS indeed comports with all controlling state and Federal statutes and regulations.

III. *Implementation of LBS and the Administrative Procedures Act*

As a final argument, plaintiff claims that LBS is invalid because it was never promulgated as a rule as required by the Administrative Procedures Act (APA), MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.,* and that it does not fall under any of the exceptions to the rulemaking requirements of the APA. Defendant argues that LBS is not a rule under the APA definition thereof, and did not have to be promulgated as such.

The parties agree that LBS as applied to plain-

tiff was implemented October 1, 1976, and thus is subject to the APA.

The section of the APA which is central to deciding this issue is MCL 24.207; MSA 3.560(107), and reads in relevant portion:

"Sec. 7. 'Rule' means an agency regulation, statement, standard, policy, ruling or instruction of general applicability, which implements or applies law enforced or administered by the agency, or which prescribes the organization, procedure or practice of the agency, including the amendment, suspension or rescission thereof, but does not include the following:

\* \* \*

"(g) An intergovernmental, interagency or intra-agency memorandum, directive or communication which does not affect the rights of, or procedures and practices available to, the public.

"(h) A form with instructions, an interpretive statement, a guideline, an informational pamphlet or other material which in itself does not have the force and effect of law but is merely explanatory.

\* \* \*

"(j) A decision by an agency to exercise or not to exercise a permissive statutory power, although private rights or interests are affected thereby."

Defendant claims that LBS falls under all the quoted exceptions to the definition of "rule". We address the applicability vel non of each exception *seriatim.*

We initially conclude that LBS is an agency policy of general applicability, contrary to defendant's assertion, as reduction of benefits under LBS is *theoretically possible* with respect to *all* recipients.

Next, defendant urges us to conclude that the exception to the rulemaking requirement of the APA found in subsection (g) of MCL 24.207 con-

trols the disposition of this issue, as plaintiff has no "right" to AFDC benefits, but a mere "entitlement". This argument is sophistic, as an "entitlement" is but a *right* bestowed upon one by another. Black's Law Dictionary (4th ed 1968), 626. The "entitlement" in this case is the *right* to participate in the AFDC benefit program, which *right* is *ab initio* bestowed upon the recipient by the Department of Social Services. *Cf. Bohlen v Weinberger,* 483 F2d 918, 922 (CA 3, 1973), *Goldberg v Kelly,* 397 US 254, 262; 90 S Ct 1011; 25 L Ed 2d 287 (1970). Upon a determination of eligibility for AFDC benefits, a recipient acquires the *right* to receive them, at least vis-à-vis the strictures of the APA. Therefore, we conclude that LBS affects *rights* of the public, and, as such, does not fall under the first quoted exception to the rulemaking requirement of the APA, *i.e.,* subsection (g) of MCL 24.207.

We likewise find subsection (h) of § 7 of the APA an inappropriate vehicle for excepting LBS from the rulemaking mandate. LBS is more than a mere explanation of Federal and state requirements, is not merely informational, nor a mere guideline. It implements Federal and state statutes and regulations, and has the direct *effect* of determining exactly the amount of aid a recipient receives. In this sense, it has the force and *effect* of law, and cannot fit under the exception found in subsection (h).

However, we are persuaded that subsection (j) of MCL 24.207 provides an exception to the rulemaking edict of the APA which is applicable to the facts of the case sub judice. We find the administration of the AFDC program and the use of LBS thereunder to be tantamount to the exercise *vel*

*non* of a *permissive* statutory power. As noted in *Village of Wolverine Lake v State Boundary Comm,* 79 Mich App 56, 59; 261 NW2d 206 (1977), if an agency policy (here LBS) follows from its statutory authority, the policy is an exercise of a permissive statutory power and not a rule requiring formal adoption. Accord, *Colombini v Director, Dep't of Social Services,* 93 Mich App 157; 286 NW2d 77 (1979). We find necessary statutory authority to be contained in MCL 400.14(1)(b); MSA 16.414(1)(b),[3] as we read it to empower the defendant to adopt, for purposes of dispersal of AFDC benefit payments, a budgetary method of the director's own choosing, so long as it comports with Federal statutes and regulations. We have already concluded that LBS surmounts this Federal obstacle.

Since the use of LBS follows directly from this statutory authority, the policy (LBS) is an exercise of a permissive statutory power, and is excepted from formal adoption and promulgation under the APA. Therefore, LBS is valid in its entirety.

The decision of the circuit court is affirmed. No costs, a public question being involved.

---

[3] The statute provides in relevant part:

"Sec. 14. (1) The state department shall have and be vested with the following additional powers and duties:

\* \* \*

"(b) To distribute as provided in this act, subject to federal rules and regulations, and in accordance with the rules promulgated by the director, moneys appropriated by the legislature or received from the federal government for the granting of aid to dependent children and supplemental security income; for medical, dental, optometric, nursing, pharmaceutical, and burial relief, and the services furnished by professions under Act No. 162 of the Public Acts of 1903, as amended, being sections 338.101a to 338.121 of the Michigan Compiled Laws, Act No. 145 of the Public Acts of 1933, as amended, being sections 338.151 to 338.159 of the Michigan Compiled Laws and Act No. 115 of the Public Acts of 1915, as amended, being sections 338.301 to 338.308a of the Michigan Compiled Laws; and for other relief or welfare services provided by law.