*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PHILIP M. O'HALLORAN, M.D., BRADEN
GIACOBAZZI, ROBERT CUSHMAN, PENNY
CRIDER, and KENNETH CRIDER,

        Plaintiffs-Appellees,

v

SECRETARY OF STATE and DIRECTOR OF THE
BUREAU OF ELECTIONS,

        Defendants-Appellants

FOR PUBLICATION
October 19, 2023
9:15 a.m.

No. 363503
Court of Claims
LC No. 22-000162-MZ

RICHARD DEVISSER, MICHIGAN
REPUBLICAN PARTY, and REPUBLICAN
NATIONAL COMMITTEE,

        Plaintiffs-Appellees,

v

SECRETARY OF STATE and DIRECTOR OF THE
BUREAU OF ELECTIONS,

        Defendants-Appellants.

No. 363505
Court of Claims
LC No. 22-000164-MZ

Before: BOONSTRA, P.J., and BORRELLO and FEENEY, JJ.

PER CURIAM.

-1-

This consolidated appeal concerns various challenges by plaintiffs[1] to a manual defendants published in May 2022 providing instructions to election challengers and poll challengers. The manual was not published as a formal administrative rule under the Administrative Procedures Act (APA), MCL 24.201 *et seq*. As the trial court, the Court of Claims observed at the opening of its opinion, "[a]n executive branch department cannot do by instructional guidance what it must do by promulgated rule. This straightforward legal maxim does most of the work in resolving these two consolidated cases." Not only do we agree with this observation, we also agree with the trial court's resolution on the issues now challenged on appeal. Accordingly, we affirm.

The May 2022 manual, titled "The Appointment, Rights, and Duties of Election Challengers and Poll Watchers," is the latest version of a manual that defendants have published for the past 20 years, with the most recent version having been published in October 2020. The manual provides instructions[2] for election challengers and poll watchers. Plaintiffs filed these cases challenging various provisions in the manual. Plaintiffs include elections challengers for the November 2022 general election, two candidates for the Legislature, the Michigan Republican Party, and the Republican National Committee.

The trial court summarized the facts underlying this case as follows:

Plaintiffs include several election challengers for the November 2022 general election; two candidates for the Michigan Legislature; the Michigan Republican Party; and the Republican National Committee. Section 730 of the Michigan Election Law, MCL 168.1 *et seq.*, permits political parties to designate challengers to be present in the room where the ballot box is kept during the election. MCL 168.730. These consolidated cases relate to a manual that the Michigan Bureau of Elections regularly issues relating to election challengers and poll watchers. By all accounts, the Bureau has issued several iterations of the manual since at least 2003; the one just prior to the current one was issued in October 2020. In May 2022, defendants drafted and published the current version titled, "The Appointment, Rights, and Duties of Election Challengers and Poll Watchers" ("May 2022 Manual"). . . .

---

[1] As did the trial court, when necessary to distinguish between the two sets of plaintiffs, we shall refer to the plaintiffs in Docket No. 363503 as the "O'Halloran plaintiffs" and those in Docket No. 363505 as the "DeVisser plaintiffs." When no such distinction is necessary, they shall collectively be referred to simply as "plaintiffs."

[2] The introductory paragraph of the manual describes its purpose as follows:

This publication is designed to familiarize election challengers, poll watchers, election inspectors, and members of the public with the rights and duties of election challengers and poll watchers in Michigan. Election challengers and poll watchers play a constructive role in ensuring elections are conducted in an open, fair, and orderly manner by following these instructions.

On September 28, 2022, plaintiffs Philip O'Halloran, Braden Giacobazzi, Robert Cushman, Penny Crider, and Kenneth Crider (collectively, "O'Halloran Plaintiffs"), sued defendants in this Court in Docket No. 22-000162-MZ. O'Halloran, Giacobazzi, and Cushman are designated election challengers for the November 2022 general election. Penny Crider is a candidate for the Michigan House of Representatives, and Kenneth Crider is a candidate for the Michigan Senate. The O'Halloran Complaint raises two claims. In Count I, the O'Halloran Plaintiffs allege that the May 2022 Manual violates Section 733 of the Michigan Election Law, MCL 168.733. In Count II, the O'Halloran Plaintiffs assert that the May 2022 Manual was promulgated without the proper notice-and-comment requirements outlined in the Administrative Procedures Act ("APA"), MCL 24.201 *et seq.*

Two days later, plaintiffs Richard DeVisser (another election challenger), the Michigan Republican Party, and the Republican National Committee (collectively, "DeVisser Plaintiffs") sued defendants separately in Docket No. 22-000164-MM. In Count I, the DeVisser Plaintiffs allege that certain provisions of the May 2022 Manual violate the Michigan Election Law. Like the O'Halloran Plaintiffs, the DeVisser Plaintiffs also allege that the May 2022 Manual is a rule promulgated without the required notice-and-comment procedures outlined in the APA.

Both sets of plaintiffs request . . . a declaration that the publication is void in toto, or alternatively, that certain passages must be removed before the November 2022 general election. The O'Halloran Plaintiffs have moved for a temporary restraining order ("TRO") and preliminary injunction; similarly, the DeVisser Plaintiffs have sought expedited declaratory relief under MCR 2.605(O).

. . . [T]his Court consolidated the cases on October 3, 2022, and ordered defendants to show cause why the relief requested in the complaints should not be granted. Defendants responded and moved for summary disposition . . . .

. . . Defendants . . . assert that the May 2022 Manual did not need to be promulgated through notice-and-comment rulemaking because the Michigan Election Law grants the Secretary of State broad authority to issue instructions, advice, and directives, and the May 2022 Manual fits within these categories. . . .

Both sets of plaintiffs responded to defendants' motion for summary disposition. They reiterate that the May 2022 Manual's language extends beyond the Michigan Election Law and should have been promulgated as a rule in accordance with the APA.

The trial court issued its extensive opinion and order on October 20, 2022.[3] Ultimately, the trial court granted some but not all of the relief plaintiffs requested. Plaintiffs have not appealed and challenged the denial of that relief. While the trial court rejected some of what it described as "broad, sweeping" requests for relief, it did identify five specific areas where plaintiffs were entitled to relief: (1) the credential-form requirement, (2), communication with election inspectors other than the "challenger liaison," (3) the prohibition on recording "impermissible challenges," (4) the prohibition on electronic devices in the Absent Voter Counting Board (ACVB) facilities, and (5) appointment of challengers on election day. On appeal, defendants do not challenge the last category. Accordingly, we consider the first four and, like the trial court, shall look to each in turn.

There are two primary issues present in this case. First, whether the challenged provisions in the manual are consistent with Michigan Election Law, MCL 168.1 *et seq.*, or are in conflict with the statute. And, second, whether defendants needed to promulgate those provisions, even if authorized by statute, by a formal rule as required by the Administrative Procedures Act (APA), MCL 24.201 *et seq.*, which the manual was not. While a rule promulgated in accordance with the APA has the force of law, *Slis v Michigan*, 332 Mich App 312, 346; 956 NW2d 569 (2020), other pronouncements do not, *Twp of Hopkins v State Boundary Comm'n*, 340 Mich App 669, 689; 988 NW2d 1 (2022). As explained in *Hopkins*:

> The APA "applies to all agencies and agency proceedings not expressly exempted." MCL 24.313. An "agency" is defined as a "state department, bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute, or agency action." MCL 24.203(2). There is no dispute that the Commission is a state agency. The APA defines a "rule" to include "an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency ...." MCL 24.207. A "rule" does not include a "guideline" "that in itself does not have the force and effect of law but is merely explanatory." MCL 24.207(h). The APA defines "guideline" as "an agency statement or declaration of policy that the agency intends to follow, that does not have the force or effect of law, and that binds the agency but does not bind any other person." MCL 24.203(7). The APA prescribes how

---

[3] On November 3, 2022, the Supreme Court ordered that "the October 20, 2022 opinion and order of the Court of Claims, and any decision of the Court of Appeals in this matter, is stayed pending the appeal period for the filing of an application for leave to appeal in this Court, and if an application for leave to appeal is filed from the Court of Appeals decision, until further order of this Court." *DeVisser v Secretary of State*, 510 Mich 994; 981 NW2d 30 (2022); *O'Halloran v Secretary of State*, 510 Mich 970; 981 NW2d 149 (2022). Two Justices separately concurred, and two dissented, in lengthy separate statements. *DeVisser*, 510 Mich at 994-1018; *O'Halloran*, 510 Mich at 970-994.

agencies adopt guidelines, MCL 24.224 and MCL 24.225 and specifies that "[a]n agency shall not adopt a guideline in lieu of a rule," MCL 24.226. [340 Mich App at 689.]

Moreover, an administrative rule cannot conflict with a statute. *Brightmoore Gardens, LLC v Marijuana Regulatory Agency*, 337 Mich App 149, 161; 975 NW2d 52 (2021) ("an administrative agency is not empowered to change law enactive by the Legislature. . . .When an administrative rule conflicts with a statute, the statute controls"). Because this case involves an interpretation of a statute, we review the trial court's decision de novo. *Slis*, 332 Mich App at 335.

Const 1963, art 2, § 4(2) continues to provide[4] as follows:

> Except as otherwise provided in this constitution or in the constitution or laws of the United States the legislature shall enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting. . . .

According to MCL 168.21, "[t]he secretary of state shall be the chief election officer of the state and shall have supervisory control over local election officials in the performance of their duties under the provisions of this act." Further, under MCL 168.31(1), the Secretary "shall do all of the following":

> (a) Subject to subsection (2),[5] issue instructions and promulgate rules pursuant to the administrative procedures act . . . for the conduct of elections and registrations in accordance with the laws of this state.

> (b) Advise and direct local election officials as to the proper methods of conducting elections.

> (c) Publish and furnish for the use in each election precinct before each state primary and election a manual of instructions that includes specific instructions on assisting voters in casting their ballots, directions on the location of voting stations

---

[4] The recent amendment of Const 1963, art 2, § 4(1) only expressly recognizes that the right to vote includes the right to be free from impositions of unreasonable burdens in doing so. The new provisions neither added anything to existing authority as concerns the extent to which the Secretary of State may issue binding authority without recourse to APA rulemaking, nor otherwise call for reading the pertinent provisions of the Election Law in a different light. Accordingly, the constitutional amendment of which the amicus curiae makes issue does not obviate the need to review the decision below on its merits under then-existing law.

[5] Subsection (2) requires the Secretary of State to "promulgate rules establishing uniform standards for state and local nominating, recall, and ballot question petition signatures."

in polling places, procedures and forms for processing challenges, and procedures on prohibiting campaigning in the polling places as prescribed in this act.

\* \* \*

(e) Prescribe and require uniform forms, notices, and supplies the secretary of state considers advisable for use in the conduct of elections and registrations.

\* \* \*

(h) Investigate, or cause to be investigated by local authorities, the administration of election laws, and report violations of the election laws and regulations to the attorney general or prosecuting attorney, or both, for prosecution.

\* \* \*

(n) Create an election day dispute resolution team that has regional representatives of the department of state, which team shall appear on site, if necessary.

**Nondelegation Doctrine**

Although neither the trial court nor the parties have framed their positions in terms of nondelegation doctrine, to the extent that defendants suggest that their prerogative to issue "instructions . . . for the conduct of elections" under MCL 168.31(1)(a) authorizes them to issue any new requirement without following APA rule procedures simply by calling it an instruction, that doctrine is implicated.

Our state Constitution includes the following provision: "The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const 1963, art 3, § 2. Thus, our Constitution prohibits the Legislature from delegating its lawmaking powers to the executive branch. The "essential purpose" of the doctrine is "to protect the public from misuses of the delegated power." *Blue Cross & Blue Shield v Governor*, 422 Mich 1, 51; 367 NW2d 1 (1985). The Legislature may, however, authorize an administrative agency to exercise certain powers when fulfilling its legislatively created duties and responsibilities. See, e.g., *Mich Central R Co v Mich R Comm*, 160 Mich 355, 361-368; 125 NW 549 (1910); *G F Redmond & Co v Mich Securities Comm*, 222 Mich 1, 192 NW 688 (1923). The test for determining whether the Legislature has properly authorized such agency action is whether the Legislature has prescribed "standards . . . as reasonably precise as the subject matter requires or permits" when granting regulatory or rulemaking authority to an administrative agency. *Osius v St Clair Shores*, 344 Mich 693, 698; 75 NW2d 25, 27 (1956).

One legal commentator has concluded that "Michigan decisions" provide "no clear rule as to when a legislative rule must be promulgated or, for that matter, whether a rule is legislative or interpretative." McKim, III, *The Sometimes Dubious Efficacy of Michigan Department of*

*Treasury "Rules," "Revenue Administrative Bulletins," "Letter Rulings," "Questions and Answers" and Other Publications*, 60 Tax Law 1019, 1048 (2007).

Although we are aware of no authority that stands for the proposition that the Legislature may not delegate to the executive branch the authority to issue a rule, as defined by MCL 24.207, without requiring the APA's rulemaking procedures, we proceed in our review while keenly mindful of the nondelegation doctrine and the caselaw calling for adherence to APA procedures in particular.|

**Rulemaking**

The APA defines a "rule" as "an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or rescission of the law enforced or administered by the agency." MCL 24.207. The APA further states that "[a]n agency shall not adopt a guideline in lieu of a rule." MCL 24.226. "An agency's failure to follow the process outlined in the APA renders a rule invalid." *Mich Charitable Gaming Ass'n v Michigan*, 310 Mich App 584, 594; 873 NW2d 827 (2015), lv den 499 Mich 887 (2016). "In order for an agency regulation, statement, standard, policy, ruling, or instruction of general applicability to have the force of law, it must fall under the definition of a properly promulgated rule. If it does not, it is merely explanatory." *Danse Corp v Madison Hts*, 466 Mich 175, 181; 644 NW2d 721 (2002).

After setting forth the general definition of an administrative "rule," MCL 24.207 sets forth a list of things that do not constitute such rules, including the following:

> (g) An intergovernmental, interagency, or intra-agency memorandum, directive, or communication that does not affect the rights of, or procedures and practices available to, the public.
>
> * * *
>
> (j) A decision by an agency to exercise or not to exercise a permissive statutory power, although private rights or interests are affected.

"[I]n order to reflect the APA's preference for policy determinations pursuant to rules, the definition of 'rule' is to be broadly construed, while the exceptions are to be narrowly construed." *American Federation of State, Co & Mun Employees v Dep't of Mental Health*, 452 Mich 1, 10; 550 NW2d 190 (1996).

Defendants argue that the challenged instructions fall under the "permissive statutory power" exception to the definition of "rule" set forth in MCL 24.207(j). In support, defendants cite *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19; 703 NW2d 822 (2005), and *Hinderer v Dep't of Social Servs*, 95 Mich App 716, 727; 291 NW2d 672 (1980).

In *By Lo Oil*, 267 Mich App at 47, this Court recited that "Subsection 7(j) excepts administrative action from the APA's definition of 'rule' when the Legislature has either explicitly

or implicitly authorized the action in question," and concluded that the agency's use of an administrative bulletin to determine certain tax liability came under that exception because the pertinent statute "explicitly required the department to 'prescribe' the invoice required . . . and did not mandate the department to do so pursuant to the procedural requirements of the APA."

In *Hinderer*, 95 Mich App at 727, this Court approved an agency's use of a "lag budgeting system" for reducing benefits for a recipient of the Aid to Families with Dependent Children program, which was not promulgated as an APA rule, on the ground that the agency was statutorily empowered to "adopt . . . a budgetary method of the director's own choosing."

Defendants assert that the Secretary of State's duty under MCL 168.31(1)(a) to "issue instructions and promulgate rules . . . for the conduct of elections" includes the legislative authority "to issue instructions rather than rules" as an exception to the requirement that administrative rules be promulgated in accord with the APA. The trial court held that "the Secretary's responsibility for issuing instructions is distinct from the authority to promulgate rules, where the latter has the force and effect of law, but the former does not." In fact, defendants' position would leave them at liberty to issue binding regulations at will, without ever having to adhere to the notice-and-hearing requirements of the APA. MCL 168.31(1)(a) preserves the distinction between mere instructions and APA rules, thus calling on the defendants to respect that distinction and issue each kind of regulation with the degree of formality that is required.

The question, then, for each of the four contested facets of the May 2022 Manual at issue is whether the challenged regulation comports with the Election Law, and, if so, whether it constitutes a sufficient extension of that enabling law that its validity depends on promulgation as an APA rule.

**The credential form requirement.**

MCL 168.732 requires that election challenges possess written credentials:

> Authority signed by the recognized chairman or presiding officer of the chief managing committee of any organization or committee of citizens interested in the adoption or defeat of any measure to be voted for or upon at any election, or interested in preserving the purity of elections and in guarding against the abuse of the elective franchise, or of any political party in such county, township, city, ward or village, shall be sufficient evidence of the right of such challengers to be present inside the room where the ballot box is kept, provided the provisions of the preceding sections have been complied with. The authority shall have written or printed thereon the name of the challenger to whom it is issued and the number of the precinct to which the challenger has been assigned.

Defendants have created a form that challengers are purportedly required to use to establish their credentials. Specifically, on pages 4-5 of the manual,[6] it states:

> This authority, also known as the Michigan Challenger Credential Card, must be on a form promulgated by the Secretary of State. The blank template credential form is available on the Secretary of State's website. The entire credential form, including the challenger's name, the date of the election at which the challenger is credentialed to serve, and the signature of the chairman or presiding officer of the organization appointing the challenger, must be completed. If the entire form is not completed, the credential is invalid and the individual presenting the form cannot serve as a challenger.

The trial court noted that this appears to be a new requirement and that in the past the political parties issued their own credential forms to challengers. The trial court further stated that it did not take issue with having a uniform credential form, but ultimately concluded that the Secretary lacks the authority to require that challengers use defendants' form:

> [O]ur Legislature expressly set out the "evidence" needed to show that a person was properly credentialed as a challenger. In MCL 168. 732, a section entitled, "Presence of challenger in room containing ballot box; *evidence of right to be present*," (emphasis added), our Legislature set forth the following three items that evidence a valid challenger: (a) "[a]uthority signed by the recognized chairman or presiding officer" of the organization or committee (here, major political party); (b) the written or printed name of the challenger; and (c) the precinct number for the challenger's assigned precinct. Because our Legislature set forth three specific requirements that a person must satisfy to evidence that the person is a valid challenger, defendants cannot, in the absence of a promulgated rule, add a fourth, i.e., the mandatory use of a particular form issued by the Secretary of State.

The trial court did acknowledge that the Secretary of State can certainly create a form for the challengers' convenience. As the trial court observed,

> our Legislature has set forth the exhaustive list of evidence for validating a credential, and if a purported credential includes the three items in MCL 168.732, then that purported credential fully complies with the Michigan Election Law— nothing more is required. The provision in the May 2022 Manual requiring the use of the uniform challenger-credential form violates the Michigan Election Law and APA.

---

[6] All references to the manual are from the version appended as an exhibit to the trial court's October 20, 2022 opinion.

We agree with the trial court. The Legislature has neither required nor authorized the creation of a mandatory form. Indeed, given that the Legislature has set forth the requirements for challenger credentialing, nothing more may be added.[7]

**The requirement that communication only be with the "Challenger Liaison."**

On page five of the manual, defendants create the position of "Challenger Liaison," who is one of the election inspectors. On the top of page six, the manual it states in bold print: "**Challengers must not communicate with election inspectors other than the challenger liaison or the challenger liaison's designee unless otherwise instructed by the challenger liaison or a member of the clerk's staff**." This directive is reinforced later on the page with this statement: "Challengers must communicate only with the challenger liaison unless otherwise instructed by the challenger liaison or a member of the clerk's staff. Challengers must not communicate with election inspectors who are not the challenger liaison unless otherwise instructed by the challenger liaison or a member of the clerk's staff." The restriction is again repeated on page 21. According to the manual, a violation of this or any other instruction or a direction given by an election inspector results in a warning being issued and a repeat violation may result in the challenger's ejection.

The trial court concluded that this requirement was inconsistent with the statute:

> Plaintiffs argue that the manual's limitation on which inspectors the challengers may interact with violates MCL 168.733(1)(e), which provides that a challenger may bring certain issues to "an election inspector's attention" without restriction to a *particular* inspector.
>
> The authority to designate a "challenger liaison" is absent from the Michigan Election Law—in fact, the very label appears nowhere in statute. Defendants have not presented this Court with any statute, common law, case law, or promulgated rule that gives them the authority to restrict with which election inspector a challenger can communicate. Our Legislature provided a challenger the right to communicate to "an" election inspector, and defendants cannot artificially restrict that to a designated inspector. Whether it makes sense to have such a liaison is one thing; it is another thing entirely to require, at the risk of being ejected, a challenger to speak to only the designated liaison. This provision of the May 2022 Manual goes well beyond what is provided in law and impermissibly restricts a challenger's ability to bring certain issues to any inspector's attention. Accordingly,

---

[7] We do note some apparent contradiction in the trial court's opinion. It states that "defendants cannot, in the absence of a promulgated rule, add a fourth" requirement. [10/20/20 Opinion and Order, p 15.] This would imply that defendants could, if it had promulgated a rule, establish the requirement. It later states that mandatory use of defendants' uniform challenger credential form "violates the Michigan Election Law and APA." But if it would violate the election statute, then it would seem to follow that defendants could not require the use of the form even if it did promulgate a rule. In any event, at this point we need not engage in an extensive analysis of this point as defendants have not promulgated this as a rule.

the manual must be revised to make clear that a challenger need not bring an issue to the attention of only a liaison challenger, but instead can bring such issue to the attention of any election inspector at the applicable location. [Emphasis in original.]

MCL 168.733(1) provides in pertinent part:

The board of election inspectors shall provide space for the challengers within the polling place that enables the challengers to observe the election procedure and each person applying to vote. A challenger may do 1 or more of the following:

* * *

(e) Bring to *an* election inspector's attention any of the following . . . .

As the trial court stated, the statute itself authorizes a challenger to bring a matter to the attention of "an election inspector," not a "challenger liaison." We agree with the trial court that it may be beneficial to designate one of the election inspectors as the challenger liaison to serve as a central point of contact for the challengers. But the statute does not grant defendants the authority to require that a challenger only bring matters to such a liaison and, perhaps more importantly, the statute explicitly authorizes challengers to communicate with any election inspector. Defendants' attempt to restrict that right is a violation of the statute.

**The prohibition on recording "impermissible challenges."**

This issue involves a restriction in the manual on what challenges may be made. The manual explains the process for making a challenge:

A challenge must be made to a challenger liaison. The challenger liaison will determine if the challenge is permissible as explained below. Assuming the challenge is permissible, the substance of the challenge, the time of the challenge, the name of the challenger, and the resolution of the challenge must be recorded in the poll book. If the challenge is rejected, the reason for that determination must be recorded in the poll book.

An impermissible challenge, as explained below, need not be noted in the poll book.

The manual defines an "impermissible challenge" as:

Impermissible challenges are challenges that are made on improper grounds. Because the challenge is impermissible, the challenger liaison does not evaluate the challenge to accept it or reject it. Impermissible challenges are:

• Challenges made to something other than a voter's eligibility or an election process;

• Challenges made without a sufficient basis, as explained below; and

-11-

• Challenges made for a prohibited reason.

The manual then states that while an election inspector is not required to note an impermissible challenge in the poll books, they may do so. In fact, it "encourages" an inspector to note the content of the impermissible challenge and any warning given to the challenger. If a challenger makes multiple impermissible challenges, the inspector is encouraged to note the content and number of such challenges. The manual then states in bold type: "**Repeated impermissible challenges may result in a challenger's removal from the polling place or absent voter ballot processing facility.**"

MCL 168.727(2) outlines the duties of an election inspector when a challenge is made:

(2) Upon a challenge being made under subsection (1), an election inspector shall immediately do all of the following:

(a) Identify as provided in sections 745 and 746 a ballot voted by the challenged individual, if any.

(b) Make a written report including all of the following information:

(i) All election disparities or infractions complained of or believed to have occurred.

(ii) The name of the individual making the challenge.

(iii) The time of the challenge.

(iv) The name, telephone number, and address of the challenged individual.

(v) Other information considered appropriate by the election inspector.

(c) Retain the written report created under subdivision (b) and make it a part of the election record.

(d) Inform a challenged elector of his or her rights under section 729.

As the trial court noted, the statute does not use the terms "permissible" and "impermissible" in describing challenges.[8] Nor does it require the documentation of only "permissible" challenges. It requires the documentation of all challenges, permissible or impermissible. Accordingly, the trial court concluded that

to the extent that the May 2022 Manual permits an election inspector not to record a challenger's challenge to a person's voting rights because, in the election

_____

[8] MCL 168.727(3) does state that a "challenger shall not make a challenge indiscriminately and without good cause." And it also provides that an "individual who challenges a qualified and registered elector of a voting precinct for the purpose of annoying or delaying voters is guilty of a misdemeanor." But it does not excuse such improper challenges from being documented.

inspector's view, such challenge does not have a sufficient basis, this is directly contrary to our Legislature's requirement in MCL 168.727(2) that a record of the challenge be made. Even if the challenge is determined to be without basis in law or fact, if the challenge is made, it must be recorded. *Id*.

The trial court did conclude the statutory documentation requirement only extends to challenges regarding voter qualification and that defendants have the discretion to adopt a recordkeeping system regarding challenges not involving voter rights, i.e., for a reason other than those listed in MCL 168.727(1) or MCL 168.733(1)(c).

The trial court also addressed the prohibition on making repeated impermissible challenges and it resulting in the challenger's removal. MCL 168.733(3) provides a basis for expulsion of a challenger: "Any evidence of drinking of alcoholic beverages or disorderly conduct is sufficient cause for the expulsion of a challenger from the polling place or the counting board." The statute does not authorize defendants to adopt a rule providing other reasons for expulsion. Accordingly, unless the repeated "impermissible" challenges rise to the level of disorderly conduct, we agree with the trial court that there is no basis in law for the challenger's expulsion.

**The prohibition on electronic devices in the Absent Voter Counting Board (ACVB) facilities.**

The final provision of the manual that the trial court found problematic is the restriction on electronic devices in the ACVB: "No electronic devices capable of sending or receiving information, including phones, laptops, tablets, or smartwatches, are permitted in an absent voter ballot processing facility while absent voter ballots are being processed until the close of polls on Election Day."[9] A challenger in violation of this rule may be ejected from the AVCB facility.

The trial court found statutory authority regarding restrictions on communicating certain information, but not on a ban of the possession of electronic devises:

> Thus, MCL 168.765a(9) and (10), collectively, prohibit a challenger from disclosing information relating to the processing of absentee ballots before the polls close, the disclosure of which is a felony. But MCL 168.765a does not categorically prohibit the possession of electronic devices in the AVCB facility or otherwise suggest that physical sequestration includes (or equates to) a prohibition on the possession of electronic devices.

The trial court then noted that the Legislature had plenty of opportunity in recent amendments to the election statute to include such a restriction, but did not do so:

> MCL 168.765a was enacted four years ago as a provision in a 2018 update to the Michigan Election Law. See 2018 PA 123. Our Legislature amended the same statute twice in 2020. See 2020 PA 95 and 2020 PA 177. Cell phones and

---

[9] The manual does permit challengers at polling places to possess electronic devices, with some restriction on their use. The prohibition on possessing one only applies to an ACVB.

-13-

other electronic devices have been prevalent for decades and have long had the capability to record. In the face of the existence of these devices, our Legislature did not see fit to ban them in AVCB facilities when it added section 765a to the Michigan Election Law in 2018 or when it amended the statute twice in 2020. Rather, our Legislature enacted two different prophylactic measures to guard against the communication of election-related information—I.e., first, the taking of an oath, and second, physical sequestration at the AVCB facility—and, for violating either measure or otherwise communicating election-related information, our Legislature imposed the penalty of a felony conviction. See MCL 168. 765a(9) and ( 10). Our Legislature could have added a third prophylactic measure, maybe even the one favored by defendants, but it chose not to do so. When our Legislature enacts a public policy in one particular way but not another, its choice must be respected and enforced by the other two branches. *Spalding v Swiacki*, 338 Mich App 126, 138; 979 NW2d 338 (2021) ("When the Legislature expressly sets a particular standard in one section of a statute but not in another, we presume that the Legislature intended for different standards to apply to the different sections— i.e., the Legislature's word choice was intentional.").

In sum, use of an electronic device to communicate information regarding the processing or tallying of votes is prohibited, under pain of a felony conviction, but the mere possession of an electronic device is not permitted under Michigan's election law. While the cautious approach is, as the trial court points out, for a challenger or poll watcher to simply leave their electronic device outside the room, the statute simply does not require it. As the trial court stated, "[p]rohibiting electronic devices in the AVCB facility might be a good idea, but before a good idea can become law or have legal force and effect, that idea must be embodied within an enacted statute or promulgated rule. The Court declines to read a prophylactic measure into a statute that does not appear in its plain language." We agree.

Defendants have broad authority to issue binding non-rule instructions on election workers, but not on challengers or other outside observers. Election workers, including inspectors, conduct operations that come under the authority of the Secretary of State, and thus while doing so are effectively the Secretary's subordinates. Accordingly, instructions directed at such subordinates are not directives of "general applicability" for purposes of the definition of "rule" under MCL 24.207. Defendants are thus free to issue binding instructions applicable to election workers without resort to the APA's formal rulemaking procedures. In contrast, election challengers, by the nature of the office, are outsiders standing ready to raise objections to how elections are conducted. Instructions directed at the latter thus go beyond defendants' immediate scope of inherent supervisory authority and instead function as regulations of general applicability, which for that reason must be issued as properly promulgated APA rules. Defendants may issue mere instructions that are binding on election workers who operate as defendants' employees and subordinates, but regulations targeting election challengers or poll watchers reach beyond defendants' general supervisory scope and must be promulgated as APA rules.

In conclusion, the relief that the trial court granted with respect to these issues is "that defendants shall have the discretion either to (1) rescind the May 2022 Manual in its entirety; (2) revise the May 2022 Manual to comply with this Opinion and Order; or (3) revise an earlier iteration of the manual to comply with this Opinion and Order." For the reasons stated above, we

are not persuaded that the trial court erred in granting this relief, and defendants shall comply with the trial court's decree.

      Affirmed. Plaintiffs may tax costs.


/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Kathleen A. Feeney