Theresa **HARRIS** and Dorothy Goodwin, Petitioners,

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN RESOURCES, SOCIAL REHABILITATION ADMINISTRATION, Respondent.**

**Nos. 6857, 6858.**

District of Columbia Court of Appeals.

Argued April 5, 1973.

Decided May 21, 1973.

Margaret Stone, New York City, for petitioners.

Leo N. Gorman, Asst. Corporation Counsel, with whom C. Francis Murphy, Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief, for respondent.

Before FICKLING, NEBEKER and YEAGLEY, Associate Judges.

NEBEKER, Associate Judge:

Petitioners are working mothers who challenge the computations by respondent of their public assistance entitlements under Aid to Families with Dependent Children (AFDC), D.C.Code 1967, § 3–202 et seq. After reviewing the records and briefs and hearing oral argument, we affirm.

Petitioner Dorothy Goodwin had been receiving a public assistance income supplement to help support three minor children when her salary was garnisheed. The garnishment grew our of a default judgment as the result of an unpaid contract which she entered into as an accommodation maker to allow her daughter and son-in-law to purchase furniture on credit. Upon commencement of the garnishment, Mrs. Goodwin requested respondent, District of Columbia Department of Human Resources, Social Rehabilitation Administration (SRA), to increase her public assistance grant claiming that the garnishment was a mandatory deduction for purposes of determining her entitlement. Her request was denied by the hearing officer on the ground that the garnishment was the result of a voluntary act on her part and not, therefore, a mandatory deduction required by law. This rejection was adopted by the SRA director and her petition followed under D.C.Code 1972 Supp., § 1–1510, a section of the District of Columbia Administrative Procedure Act.

Petitioner Theresa Harris supports a minor child and applied for public assistance claiming that as a result of a voluntary assignment of her wages her net income now qualified her for such assistance. The assignment of her wages had been made for the purpose of repaying a loan from a credit union. Initially, respondent deducted the assignment of wages when determining petitioner's net income for purposes of eligibility, and Mrs. Harris began to receive assistance payments. Respondent then determined that it had erred in deducting the assignment and notified Mrs. Harris that her benefits would be terminated since she was not eligible for such payments. A hearing examiner determined that the wage assignment to repay a loan

was not a mandatory deduction required by law and recommended that Mrs. Harris' assistance payments be terminated. This recommendation was approved by the SRA director and her petition similarly followed.

Petitioners contend (1) that since the funds garnisheed and assigned were not "actually available" to the petitioners, such wages cannot be considered as income for purposes of their eligibility or entitlement; and (2) that the garnisheed and assigned funds were not voluntary deductions for petitioners' future benefit, but were deductions required by law and, therefore, properly excluded from their net incomes.

The AFDC program is authorized by the Social Security Act of 1935, as amended, 42 U.S.C. § 601 et seq. The purpose of the Act is to encourage "the care of dependent children in their own homes . . . and to help . . . parents or relatives to attain or retain capability for the maximum self-support and personal independence. . . ." 42 U.S.C. § 601. In determining both the eligibility for and amount of assistance payments a working mother with dependent children may receive under the AFDC program, the SRA is directed to take into account the net income received by the mother from her employment. At the time of the administrative decisions in these cases, D.C.Council Regulation 71–2, § 4 provided:

> Section 4a. Earned income includes income or resources in cash or in kind earned by an individual through the receipt of wages, salaries, commissions, or profit from activities in which he is self-employed.

> (b). Only the net income from wages and salaries after deductions or withholdings required by law have been made, shall be considered as a resource. Voluntary deductions authorized by an individual for his future benefit shall not be excluded from gross income. In lieu

of deducting the expenses of earning such income, the Department shall follow the special grant requirements of Section 2(a)(4) of Regulation No. 69–57, enacted December 31, 1969. [Emphasis supplied.]

Additionally, D.C.Council Regulation 71–2, § 3 provided:

> All income and other resources shall be identifiable as to nature, amount, and time of receipt, and must be actually available to the applicant or recipient for his current use. . . . [Emphasis supplied.]

■ Petitioners' reading of D.C.Council Regulation 71–2, § 3 requires the income to be actually available for current use. However, an interpretation of this regulation must take into consideration both the underlying purpose of the Social Security Act and the other regulations. Daniels v. Thompson, D.C.App., 269 A.2d 437 (1970). A mere reading of D.C. Council Regulation 71–2, § 4(b) refutes petitioners' contentions. That regulation states that voluntary deductions for future benefit (e. g., a U.S. Savings Bond or health insurance deduction) are not to be excluded from gross income. The regulations anticipate that certain voluntary deductions will not be available for current use but since they do constitute a benefit for the applicant they are not excluded for purposes of determining AFDC eligibility or entitlement. Therefore, petitioners' cases must rest on their contentions that the deductions are not voluntary but mandatory deductions required by law.

■ In each of these cases the petitioner's voluntary action was the cause of the reduction of her salary. In the case of petitioner Goodwin, it was her voluntary act of signing as an accommodation maker which resulted in her salary being garnisheed. In the case of petitioner Harris, it was her voluntary act of assigning her

wages to secure the repayment of a loan.[1] Although both transactions by which the money was withdrawn from petitioners' salaries were recognized or required by the machinery of law (*i. e.,* garnishment and assignment), they can hardly be viewed as deductions required by law since the law did not dictate the deductions. The law merely provided a means to execute or accomplish the deductions. The deductions were the result of petitioners' voluntary acts of incurring the debts.

Moreover, one of the express purposes of the AFDC program is to help parents attain or retain the capability for maximum self-support and personal independence. 42 U.S.C. § 601. The petitioners' contentions which would allow them to transfer their debts to SRA by causing a garnishment or assignment of their wages would defeat this purpose of the statute. Petitioners would merely become more dependent upon receipt of payments as opposed to developing self-support and personal independence. Clearly, the statute *did not contemplate such a result.*

As for petitioners' contention that deductions for the garnishment and assignment must also be for petitioners' future benefit (Council Regulation 71–2, § 4(b), *supra*), suffice it to say that the reduction and ultimate elimination of one's debt is clearly a present and future benefit for petitioners. It would seem that petitioners confuse consumption of purchased goods or services with benefit in order to argue that the present debts are for past benefits. Such construction of that term of the regulation would be in conflict with the statutory purpose of self-support and personal independence.

■ Petitioners also argue that the proceeds of the loans are no longer available for their use and that therefore the "windfall" provisions of the regulations[2] dictate that the garnisheed and assigned funds should not be considered. For example, they analogize their position to 45 CFR § 233.20(a)(3)(ii)(d), which states that where an unexpected payment becomes available it may not be considered as an available resource after it has been spent. The "windfall" regulations involve extraordinary happenings (*e. g.,* overpayments, legacies, settlement of law suits, etc.), and not earned income within the meaning of D.C.Council Regulation 71–2, § 4(a), which income is being obtained by the petitioners in their regular efforts to attain or retain a capacity for self-support and independence. Such exceptions are not, therefore, applicable where, as here, the applicants' voluntary actions result in a reduction of their regular incomes.

The orders are

Affirmed.

1. From the record it is not clear whether petitioner Harris' assignment was a wage assignment or merely an allotment to her account at the credit union from which the credit union deducted her loan payments. No matter what the method was, neither would aid petitioner. If it was a true wage assignment it not only was not required by law but indeed was proscribed by law. D.C.Code 1972 Supp., § 28–2305. If it was an allotment to the bank it was her voluntary action which diverted the funds to her account.

2. 45 CFR § 233.20(a)(3)(ii)(c), (d) & (e).