[No. 43655. En Banc. November 18, 1976.]

KAREN E. ANDERSON, ET AL, *Appellants*, v. CHARLES R. MORRIS, as *Secretary of the Department of Social and Health Services, Respondent*, VIRGINIA WESTERBERG, *Intervenor*.

*Lonnie Davis* and *Janalee R. Strandberg* of *Northwest Washington Legal Services,* for appellants.

*Slade Gorton, Attorney General,* and *Walter E. White, Assistant,* for respondent.

*Jack Archer, Linda Dawson,* and *Patrick McIntyre* of *Legal Services Center* (Seattle), for intervenor.

HUNTER, J.—This appeal concerns the way in which the State Department of Social and Health Services (DSHS) treats "lump sum" payments in the administration of the Aid for Dependent Children (AFDC). The appellants, Karen E. Anderson and Emily Peterson, both receive monthly assistance grants under AFDC. Appellant Anderson received an income tax refund check which was endorsed by her but cashed by her former husband. Even though she did not receive any of the funds, DSHS characterized the refund as "income" within AFDC, reduced her monthly grant as a consequence, and ultimately assessed an overpayment subject to the administrative review process. Appellant Peterson, in addition to receiving an income tax refund ($78), also received a cash inheritance ($98). The DSHS classified both of these items as "income" and as a

consequence, terminated appellant Peterson's monthly grant, again subject to the administrative review process.

On July 18, 1974, the appellants sued the respondent, Charles R. Morris, individually and as Secretary of DSHS for a declaratory judgment and injunctive relief, seeking to invalidate respondent's definition of "income," to enjoin the use of the presumption that such "income" was "actually available," and to require the release of wrongfully withheld funds. The case was certified as a class action on October 7, 1974, on the first two issues of the validity of respondent's definition of "income" and the correctness of the presumption that such "income" is "actually available." The class represented by appellants consists of public assistance recipients under AFDC who have been notified that their monthly grants would be reduced or terminated due to the receipt of similar "lump sum" amounts. Following trial in this matter, the Superior Court entered a judgment of dismissal on February 3, 1975, and it is from this judgment that appellants appeal.

Intervenor, Virginia Westerberg, is a member of the class represented by the appellants. Her position is presented on an agreed statement of facts. Intervenor worked from January to June 1973, and began receiving AFDC benefits in October 1973. In March 1974, she received an income tax refund ($466). As with appellants, DSHS classified this amount as "income" within the AFDC program and as a result assessed an overpayment against intervenor. Intervenor argued that she was entitled to apply this amount against certain exemptions created by Washington in administering AFDC and thus DSHS could not consider the refund in determining intervenor's monthly assistance level. By order of this court dated October 17, 1975, intervenor was allowed to join appellants in this appeal in order to present this argument.

The first issue in this appeal is whether the state definition of "income" contained in RCW 74.04.005(12) and WAC 388-22-030(34) is valid. The appellants argue that it is in-

consistent with federal regulations and therefore cannot stand. We agree.

 AFDC, which was created by 42 U.S.C. §§ 601-10, is a joint federal-state program involving federal funding and state administration. A state need not participate in the program but if it does, then the state system must be consistent with the federal legislation creating the program and the federal rules and regulations implementing it. *See Townsend v. Swank*, 404 U.S. 282, 286, 30 L. Ed. 2d 448, 92 S. Ct. 502 (1971); *Rosado v. Wyman*, 397 U.S. 397, 420, 25 L. Ed. 2d 442, 90 S. Ct. 1207 (1970); *King v. Smith*, 392 U.S. 309, 316-17, 333 & n.34, 20 L. Ed. 2d 1118, 88 S. Ct. 2128 (1968); *Rodriguez v. Vowell*, 472 F.2d 622, 624 (5th Cir.), *cert. denied*, 412 U.S. 944 (1973).

With regard to the present case, the pertinent federal statutory provision is 42 U.S.C. § 602(a)(7).

> (a) A State plan for aid and services to needy families with children must . . . (7) . . . provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children . . .

The applicable implementing regulation, promulgated by the Department of Health, Education, and Welfare, is contained in 45 C.F.R. 233.20(a)(3)(ii)(c) (1973):[1]

---

[1]The Department of Health, Education, and Welfare revised this regulation in 1975 to read as follows:

> [I]n determining need and the amount of the assistance payment, after all policies governing the reserves and allowances and disregard or setting aside of income and resources referred to in this section have been uniformly applied:
>
> . . .
>
> (D) net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance

. . .

45 C.F.R. 233.20(a)(3)(ii)(D) (1975). *See also* 45 C.F.R. 233.20(a)(6)(i)- (viii), (7) (1975).

We express no opinion as to the correct interpretation of this recent

▇n establishing financial eligibility and the amount of the assistance payment . . . (c) only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered . . .

Under this regulation, in order to be considered in determining eligibility and need, income must meet all three requirements, *i.e.*, it must be "actually available for current use on a regular basis." *See Kaisa v. Chang*, 396 F. Supp. 375, 377 (D. Hawaii 1975).

The definition of income adopted by the state legislature is found in RCW 74.04.005 (12). "Income" consists of

[a]ll appreciable gains in real or personal property (cash or kind) or other assets, which are received by or become available for use and enjoyment by an applicant or recipient after applying for or receiving public assistance . . .

*See* WAC 388-22-030 (34). It is clear that this definition at most requires actual availability for current use. Under the state definition of income, nonregular gains or amounts that are currently available may be considered as "income." It is under this definition that the DSHS in the present case determined that the "lump sum" amounts, consisting of income tax refunds and a cash inheritance, constituted "income" and were to be considered as such in determining eligibility and need under AFDC.

▇ Respondent suggests and it has been argued that an annual income tax refund is "regular" and therefore within the federal definition of "income." *See Walker v. Juras*, 16 Ore. App. 295, 297, 518 P.2d 663 (1974). We feel that this reasoning is unpersuasive, however, since the amount of a tax refund is not certain until it is actually received and it is received only once a year if at all. Consequently, a tax refund is not "regular" in the ordinary sense of the word. *See Kaisa v. Chang, supra* at 377 n.13. Respondent also argues that in effect appellants are really challenging the state's determinations as to standard of need and level of

regulation or its application to a fact situation like that of the present case.

benefits, an area in which the state unquestionably has complete authority. *See King v. Smith, supra* at 318. This argument is clearly without merit because while it is true that the state determines its own standards as to need and benefit levels in terms of a recipient's "income" and "resources," it nevertheless must do so within the applicable federal regulations and definitions.

In order to treat a "lump sum" receipt as "income" within the federal regulation applicable to the present case, the receipt must be available "on a regular basis." To the extent that the state definition of "income" contained in RCW 74.04.005(12) allows otherwise, it is invalid under the supremacy clause of the United States Constitution and cannot stand. *See Townsend v. Swank, supra; Rosado v. Wyman, supra; King v. Smith, supra* at 316-17, 333 n.34. Since an income tax refund or cash inheritance is not available on a regular basis, it is not "income" within 45 C.F.R. 233.20(a)(3)(ii)(c) (1973), and cannot be considered as income for the purpose of determining eligibility and need under AFDC. *See Kaisa v. Chang, supra* at 377-78, citing *Carr v. Saucier,* Civil No. 16,704 (N.D. Ga., Mar. 29, 1973), and *County of Alameda v. Carleson,* 5 Cal. 3d 730, 749, 488 P.2d 953, 966, 97 Cal. Rptr. 385 (1971), *appeal dismissed,* 406 U.S. 913 (1972).

This does not mean, of course, that such "lump sum" payments are not to be considered at all in the determination of eligibility and need. "Lump sum" payments would still constitute a "resource" within 45 C.F.R. 233.20(a)-(3)(ii)(c) (1973) and could be taken into consideration to the extent they are "currently available." *Cf. Kaisa v. Chang, supra* at 377 n.10; *Langs v. Harder,* 165 Conn. 490, 338 A.2d 458, 461 (1973), *cert. denied,* 416 U.S. 994, 40 L. Ed. 2d 774, 94 S. Ct. 2409 (1974).

The second issue raised by the appellants concerns the department's treatment of "lump sum" amounts in terms of "actual availability." Appellants contend that DSHS impermissibly presumes that once a public assistance recipient received such amounts, they are "actually available" and

therefore properly considered in determining eligibility and need under AFDC. Since we have decided that irregular "lump sum" amounts are resources rather than income, we will consider this argument in terms of "current availability," the standard for resources under 45 C.F.R. 233.20 (a) (3) (ii) (c) (1973).

■ Contrary to appellants' assertion, there has been no showing that DSHS employs an *irrebuttable* presumption when a "lump sum" amount is received by a public assistance recipient. DSHS presumes merely that once such an amount is received by the recipient and is under her or his control, it is "currently (actually) available" to meet the needs of the recipient and therefore properly considered in determining AFDC eligibility and need. Following the receipt of a "lump sum" amount and a DSHS determination that it is currently available, it is up to the recipient to rebut the presumption by showing, for example, that for reasons beyond the recipient's control the amount is no longer currently available or that she or he did not receive the benefit of the "lump sum" resource. The presumption used by DSHS would be improper and inconsistent with the federal regulations only if it were conclusive. *See Mothers & Childrens Rights Organization, Inc. v. Stanton*, 371 F. Supp. 298, 304 (N.D. Ind. 1973); *Hausman v. Department of Institutions & Agencies*, 64 N.J. 202, 209, 314 A.2d 362, 366 (1974); cf. *Shea v. Vialpando*, 416 U.S. 251, 265, 40 L. Ed. 2d 120, 94 S. Ct. 1746 (1974); *see also, e.g., Lewis v. Martin*, 397 U.S. 552, 25 L. Ed. 2d 561, 90 S. Ct. 1282 (1970); *Drago v. Public Welfare Div.*, 18 Ore. App. 507, 509, 525 P.2d 1065 (1974). Since there was no showing that the department in fact employs an irrebuttable presumption in its practice of assuming the current availability of "lump sum" resources after the recipient received them and has control over them, we hold that the practice of DSHS is not improper.

The appellants also argue that the state is required to make a specific factual determination in each case that an income tax refund or similar "lump sum" amount is cur-

rently available before it can be considered within AFDC. They thus suggest that DSHS may utilize no presumption at all even in cases where a "lump sum" is received by a recipient and within her or his control. The effect of this position would be to remove a "lump sum" amount from DSHS consideration in determining eligibility and need levels if the recipient could just utilize the resource so that it would no longer be "currently available." We do not believe that AFDC contemplates this result and we agree with the Pennsylvania Commonwealth Court which reached the same conclusion in a similar situation.

> Appellant in fact received the refund; it was in fact available for her use; and she did in fact use it. The argument that because she spent the refund, albeit for the meritorious purpose of paying past due bills, some of which had accrued prior to the time she began receiving assistance, and that, therefore, the refund was *no longer* available to meet current needs, is without merit.

*Department of Public Welfare v. Ivy*, 18 Pa. Cmwlth. Ct. 348, 351, 336 A.2d 435, 436 (1975). *See Harris v. District of Columbia Dep't of Human Resources*, 304 A.2d 868 (D.C. Cir. 1973); *Pelletier v. Wyman*, 35 App. Div. 2d 1047, 316 N.Y.S.2d 587 (1970); *Donato v. Wyman*, 32 App. Div. 2d 1061, 303 N.Y.S.2d 935 (1969); *cf. Randall v. Goldmark*, 366 F. Supp. 947, 952 (D. Mass. 1973). Consequently, we hold that the following conclusion of the trial court was correct:

> [O]nce the funds have "in fact" been received or made available for disposal by the recipient, the State may consider them as available within the framework of the WAC regulations.

Having decided that "lump sum" amounts must be treated as resources rather than income under the applicable federal regulations, we now proceed to intervenor's argument, which becomes very relevant because of that decision. Within certain limits the State of Washington exempts certain resources from consideration in determining

eligibility and need under AFDC. For example, RCW 74.04.005 (11) provides that

> an applicant may retain the following described re-
> sources and not be ineligible for public assistance because
> of such resources.
>
> . . .
>
> (d) Cash of not to exceed two hundred dollars for a
> single person or four hundred dollars for a family unit of
> two . . . This maximum shall be increased by twen-
> ty-five dollars for each additional member of the family
> unit.

The regulations adopted by DSHS to implement the ex-
emptions in RCW 74.04.005 (11) reflect DSHS's interpreta-
tion that the exemptions are available only to applicants,
*i.e.*, only at the time of application to the AFDC program.
*See* WAC 388-28-415, -420, -430, -450, -455; *cf.* WAC 388-
28-480 (11). Intervenor contends that the federal regula-
tions and the equal protection clause do not allow granting
such exclusions only to applicants for AFDC benefits. She
argues that the exemptions must apply also to all AFDC
recipients, including current recipients of AFDC benefits.
This would result in her income tax refund being first
applied toward the applicable exemption ceiling for cash
resources and only the remaining nonexempt amount being
considered in determining her continuing eligibility and
need.[2]

■ The federal regulations implementing AFDC per-
mit, but do not require, the states to provide for reserves or
exemptions in determining eligibility and need standards.
*See* 45 C.F.R. 233.20 (a) (3) (i) (1973). The regulations do,
however, set out standards for reserves or exemptions
within state AFDC programs, and as pointed out earlier in
this opinion, any state provisions dealing with reserves
must be consistent with the federal regulations in order to

---

[2] Intervenor was entitled to an exemption of $450 at the time of her
application but in fact could only claim $78.06 as an exempt resource.
Her position is that her tax refund of $466 should first be applied
toward the remainder of the $450 exemption ($371.94), with only the
difference of $94.06 between the tax refund and the remaining unused
exemption being considered in determining eligibility and need.

be valid. Specifically, 45 C.F.R. 233.20 (a) (3) (i) (1973) provides that a state AFDC plan must

[s]pecify the amount and types of real and personal property, including liquid assets, that may be reserved, i.e., retained to meet the current and future needs *while assistance is received on a continuing basis.* In addition to the home, personal effects, automobile and income producing property allowed by the agency, the amount of real and personal property, including liquid assets, that can be reserved for *each individual recipient* shall not be in excess of two thousand dollars.

(Italics ours.) This federal regulation refers directly to the receipt of assistance and to "each individual recipient". Thus, the regulation requires that *all recipients* receive equal treatment with regard to reserves (exemptions). *Cf. Dandridge v. Williams,* 397 U.S. 471, 480, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970); *Marotti v. White,* 342 F. Supp. 823, 826 (D. Conn. 1972). On the other hand, the DSHS regulations that implement RCW 74.04.005 (11) grant the resource exemption only to applicants. In effect this means that the exemption is available only to those recipients who possessed exempt-type resources before receiving benefits under the program and not to all recipients. Under the AFDC program, however, there is really no distinction between applicants and recipients since applicants who are granted resource exemptions are in fact program beneficiaries the same as any other AFDC recipient. Hence, to the extent this one-time resource exemption is denied to recipients who obtain exempt-type resources after receiving benefits under the program, the DSHS regulations are inconsistent with the applicable federal regulations.[3] The DSHS

---

[3]The *implementing regulations* of DSHS appear to be inconsistent with federal regulations even under 45 C.F.R. 233.20 (a) (3) (i) (1975), a more recent Department of Health, Education, and Welfare promulgation that increases to $2,250 the amount of personal property which "may be reserved by *an AFDC family* of up to 4 persons". (Italics ours.) The general reference to "AFDC family" indicates that this provision continues to apply to all families benefiting from AFDC and permits no distinction between families applying for benefits and families actually receiving benefits.

regulations are thus invalid under the supremacy clause of the United States Constitution.

 The statute itself is not invalid, however, because it is susceptible to an interpretation, consistent with legislative intent, that renders it constitutional. Where a statute is susceptible to more than one interpretation, it is our duty to adopt a construction sustaining its constitutionality if at all possible. *Spokane v. Vaux*, 83 Wn.2d 126, 129-30, 516 P.2d 209 (1973); *State ex rel. Morgan v. Kinnear*, 80 Wn.2d 400, 402, 494 P.2d 1362 (1972). In addition, if alternative interpretations are possible, the one that best advances the overall legislative purpose should be adopted. *See Weyerhaeuser v. Department of Ecology*, 86 Wn.2d 310, 321, 545 P.2d 5 (1976). "The primary objective of statutory construction is to carry out the intent of the legislature." *Anderson v. O'Brien*, 84 Wn.2d 64, 67, 524 P.2d 390 (1974). Legislative intent is to be determined in the context of the entire statute, interpreted in terms of the statute's general purpose. *See Graham v. State Bar Ass'n*, 86 Wn.2d 624, 627, 548 P.2d 310 (1976); *Greenwood v. State Bd. for Community College Educ.*, 82 Wn.2d 667, 671, 513 P.2d 57 (1973).

 We believe that the legislative purpose of the statutory exemption provision was to provide exemptions permissible under the AFDC program. In enacting RCW 74.04.005(11), the legislature intended to provide exemptions allowable within the limits of applicable federal regulations rather than to deny them altogether. In fact, the legislative direction contained in RCW 74.04.055 states:

> Any section or provision of this title which may be susceptible to more than one construction shall be interpreted in favor of the construction most likely to satisfy federal laws entitling this state to receive federal matching or other funds for the various programs of public assistance.

Consequently, in order to carry out the intended purpose of the statute and preserve the resource exemption provided therein, we hold that the resource exemptions contained in RCW 74.04.005(11) apply to all AFDC recipients rather than to applicants only. That is, AFDC recipients such as

the intervenor in the present case are entitled to the exemptions provided under RCW 74.04.005 (11). In light of our disposition of this issue, we do not consider intervenor's equal protection argument.

The trial court's judgment of dismissal is reversed, and the case is remanded for further proceedings consistent with this opinion.

STAFFORD, C.J., and ROSELLINI, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.