DAISY O'DEA vs. COMMISSIONER OF PUBLIC WELFARE.

Middlesex.    April 20, 1982. — July 15, 1982.

Present: PERRETTA, DREBEN, & KASS, JJ.

*Public Welfare*, Food stamp benefits.  *Words*, "Income," "Resource."

In determining eligibility for food stamp benefits, cash withdrawals representing unreplaced inventory in an unprofitable business owned by a member of the household were to be treated as a non-exempt resource rather than as income.  [149-151]

CIVIL ACTIONS commenced in the Superior Court on June 20, 1978, and September 25, 1979, respectively.

The cases were heard by *Linscott*, J., on motion for summary judgment.

*Ellen L. Janos*, Assistant Attorney General, for the defendant.

*Peter Berry* for the plaintiff.

DREBEN, J.  This appeal by the Department of Public Welfare (department) raises the following question: When a self-employed household member gradually depletes the inventory of his unprofitable business and makes cash withdrawals, how are such withdrawals treated for determining the household's eligibility to obtain food stamps?

The department considered the withdrawals as income and determined that the plaintiff's income exceeded the maximum allowable income limits.  As a result, in 1977, and again in 1979 (after benefits had been resumed), the department terminated the plaintiff's food stamp benefits.  After unsuccessful appeals to the department, the plaintiff brought two complaints for judicial review under G. L. c. 30A, § 14, seeking retroactive benefits for the periods in question.  The actions were consolidated and, on the plaintiff's motions for summary judgment, a judge of the Su-

perior Court reversed the agency decisions stating they were "based upon error of law and unsupported by substantial evidence." We agree with the judge that the amounts in question are not income; we hold, however, that the withdrawals representing unreplaced inventory must be considered as resources in determining the plaintiff's food stamp eligibility.

The facts are undisputed and appear in the 1979 agency decision. The plaintiff's husband, now deceased, operated a gas station. He rented the premises and only owned his tools and retail stock (gas, oil, tires and auto accessories). Although originally profitable, the business began operating at a loss in 1975, and the husband began to withdraw funds from the business to support himself. Since there were no profits, he did this by depleting inventory, that is, he did not replace stock (tires, etc.) as these items were sold.

In denying the plaintiff's appeal from the 1977 termination, the department referee included the amounts withdrawn from the business in computing the monthly net income of the household. He described these amounts as "husband's wages." While the referee denying the 1979 appeal acknowledged that the "withdrawals are not income from self-employment," he, nevertheless, determined that they were income.[1] We disagree with that conclusion based on a review of the applicable statute and regulations.[2]

---

[1] These withdrawals would not, of course, appear as income on the plaintiff's husband's tax returns. The 1977 and 1978 Federal tax returns are reproduced in the record. If accurate, the figure for gross sales includes the proceeds of these unreplaced tires. Profits, or as here, losses, are calculated by deducting the cost of goods sold and other expenses from gross sales. As set forth in schedule C-1 of the returns, the cost of goods sold was derived by subtracting the figure for closing inventory from the sum of inventory held at the beginning of the year plus goods purchased during the year. In both 1977 and 1978, the tax returns show closing inventory to be less than opening inventory, thus indicating a depletion of inventory in each year.

We in no way intend to suggest that treatment of income for tax purposes is relevant for purposes of determining income for purposes of food stamp eligibility.

[2] Citations in this opinion are to the State regulations appearing in the Code of Massachusetts Regulations of July 1, 1979, and to the Federal

While federally funded, the food stamp program is administered on the local level by the States. 7 U.S.C. § 2011 et seq. (1976). Financial eligibility standards are established by the Secretary of Agriculture, 7 U.S.C. § 2014 (1976). "A food stamp household must meet both income and resource eligibility criteria in order to participate." 106 Code Mass. Regs. 363.050.

Special regulations govern self-employment income, see 7 C.F.R. § 273.9(c)(9) and § 273.11(a); 106 Code Mass. Regs. 363.230(J) and 365.900-365.970. These sections, particularly 7 C.F.R. § 273.11(a)(4), and 106 Code Mass. Regs. 365.940, provide that self-employment income for food stamp purposes is to be computed in a manner similar to computing income for tax purposes. Thus, the cost of inventory is an allowable cost of business and only the profit on the sale of inventory is considered income. Likewise, although the full gains on the sale of capital assets are counted for food stamp purposes, even if only fifty percent of such gains are taxed for Federal income tax purposes, it is the gain, and not the full selling price, that is considered income. 7 C.F.R. § 273.11(a)(3); 106 Code Mass. Regs. 365.930(B). These provisions, together with the examples given of earned[3] and unearned[4] income and the exclusions

---

regulations appearing in the 1979 Code of Federal Regulations. The department's failure to comply with Mass.R.A.P. 16(f), 365 Mass. 862 (1974), which requires reproduction of the applicable regulations, imposed a needless burden on the court. It should be apparent that the requirement means that regulations in effect at the relevant time periods are to be reproduced. This is particularly true where, as here, questions of construction are involved. Copies of certain regulations were supplied after argument at the court's request. The Massachusetts regulations in effect in March, 1979, were not supplied. As to these the department (as well as the plaintiff) stipulated that the regulations under date of July 1, 1979, were in effect in March, 1979. The parties also stipulated that there is no substantial difference as to the regulations in effect during the two relevant time periods which affects the issues in this case. We have examined the State and Federal regulations in effect in 1977 and concur in the conclusion that the result should be the same under both sets of regulations.

[3] E.g., wages and salaries, self-employment income, assistance programs requiring work.

[4] E.g., assistance programs based on need, dividends, interest, scholarships.

therefrom (e.g. loans), see 7 C.F.R. § 273.9 and 106 Code Mass. Regs. 363.220, as well as the provisions defining resources discussed below, lead us to conclude (1) that the sales made at a loss by the plaintiff's husband did not produce income; and (2) that the withdrawals represent resources owned by the household.

Resources are defined as "all liquid and non-liquid assets owned by a household." 106 Code Mass. Regs. 363.110. Examples of liquid assets are cash, bank accounts, stocks and bonds; non-liquid assets include personal property, real estate, vehicles "and any other property." 7 C.F.R. § 273.8(c); 106 Mass. Regs. 363.110. We have no doubt that the plaintiff's husband "owned" and had access to the cash in his business which he withdrew.

Certain resources are, however, exempt in determining eligibility. The plaintiff urges that the inventory falls within the category of exempt resources because it is essential to employment and is "work related equipment, such as the tools of a tradesman or the machinery of a farmer." 7 C.F.R. § 273.8(e)(5); 106 Code Mass. Regs. 363.150(D)(1)(a).

We need not consider the extent to which inventory needed to maintain a business of a self-employed member of a household is an exempt resource, because here the inventory was no longer maintained for business purposes. "[T]he general tenor of the regulations is to issue stamps on the basis of a current need, computed without requiring divestment of the ordinary accouterments of living and of earning a livelihood . . .." *Hislop* v. *Department of Social Welfare,* 136 Vt. 205, 208 (1978). When assets originally devoted to earning a livelihood are no longer used for this purpose, we see no reason why such inventory should remain exempt. We hold that it must be treated as any other owned resource and reject the plaintiff's suggestion that 7 C.F.R. § 273.8(i)(2) and 106 Code Mass. Regs. 363.180(B) preserve any status it may have as an exempt resource.

We are buttressed in our conclusion by the express admonition in 7 C.F.R. § 273.8(e) that the section limits exclusions to those specifically listed. See also 39 Fed. Reg. 25998

(1974); 106 Code Mass. Regs. 363.150. We also find considerable force in the 1979 hearing referee's description of the withdrawals as a "bit by bit sale of [the husband's] business."[5]

The department urges that the recurring nature of the withdrawals makes them more akin to income than resources. It also argues that the fixed level of resources determining eligibility requires that resources not be a regular source of money to the household. (See 7 C.F.R. § 273.9[c][8] and 106 Code Mass. Regs. 363.170[B] which treat non-recurring lump sum payments as resources.) While this argument has some appeal, we do not find it persuasive. As noted previously, the plaintiff's husband sold his inventory at a loss. His failure to replace it neither produces income nor converts the proceeds to income. That the withdrawals were periodic and recurring no more transforms the transaction into income than would the periodic or recurring withdrawals from a savings account change that resource into income.

The fact that the O'Deas used up each withdrawal as made does not mean that the proceeds of the unreplaced inventory may not be aggregated in a reasonable manner and treated as resources of the household. Otherwise, a household member could just time the withdrawal and utilization of resources in a way to remove them from departmental consideration in determining eligibility. See *Anderson* v. *Morris*, 87 Wash. 2d 706, 712-713 (1976); *Toulou* v. *Department of Social & Health Servs.*, 27 Wash. App. 137, 141-142 (1980). Cf. *Harris* v. *District of Columbia Dept. of Human Resources*, 304 A.2d 868, 870 (D.C. 1973). See also 7 C.F.R. § 273.11(a)(1), providing for "annualizing" of self-employment income, and 106 Code Mass. Regs. 365.960.

As the department did not treat the withdrawals representing unreplaced inventory as a resource in computing the

[5] The 1979 agency decision refers to the husband's testimony that "his business was valued at approximately $38,000 in 1972 and is currently valued at between $8500 and $8900." Certainly, the marketable assets of a business which are not devoted to earning a livelihood and are offered for sale are resources of the household.

plaintiff's eligibility for food stamps during the two relevant periods, the order remanding the case to the agency should provide for such a computation.  Accordingly, the judgments are modified by adding the following sentence to the end of the second paragraph of each judgment: "The withdrawals representing unreplaced inventory are to be treated as a nonexempt resource in computing the plaintiff's eligibility."  As so modified, the judgments are affirmed.

*So ordered.*