[No. 13161-1-III.   Division Three.   November 29, 1994.]

TRINA GONZALES, *Individually and as Personal Representative, Respondent*, v. CARLOS COWEN, *Appellant*.

---

278

*Bryan G. Evenson* and *Thorner, Kennedy & Gano*, for appellant.

*Linda Ann Sellers* and *Halverson & Applegate*, for respondent.

SWEENEY, A.C.J. — Christopher Gonzales died after suffering a severe reaction to a DPT vaccination. His mother, Trina Gonzales, now Trina Hixon, filed a claim pursuant to the National Childhood Vaccine Injury Act of 1986 (NCVIA), 42 U.S.C. § 300aa-1 *et seq.* A special master of the United States Claims Court awarded $250,000 to Christopher's estate. Following the award, Christopher's putative father, Carlos Cowen, claimed the right to one-half of the award. On cross motions for summary judgment, the court held that Mr. Cowen was not entitled to share in the distribution of Christopher's estate because he had not established paternity prior to Christopher's death. Mr. Cowen appeals the adverse summary judgment. We affirm.

## FACTS AND PROCEDURAL HISTORY

Ms. Hixon and Mr. Cowen met in approximately 1986 when Mr. Cowen was stationed in Alaska with the United States Air Force. For a year and a half, they saw each other once or twice a week. In 1987, Mr. Cowen was transferred to South Carolina. Ms. Hixon followed. In April of 1988, she left Mr. Cowen because of his heavy drinking and abusive conduct. Mr. Cowen moved to New Jersey after his discharge from the service in September 1988. In June of 1989, Ms. Hixon moved to New Jersey to be near him. At some point, Ms. Hixon discovered that Mr. Cowen was living with another woman. At about the same time, she also discovered she was pregnant. When she was 6 months pregnant, Ms. Hixon moved to Seattle. Christopher was born on April 1, 1990. Tragically, the child suffered an adverse reaction to a DPT vaccination and died on June 9, 1990. Mr. Cowen never saw Christopher prior to the child's death and provided no financial support for either Christopher or Ms. Hixon.

In early March of 1992, the Yakima County Superior Court authorized Ms. Hixon to withdraw one-half of the $250,000 NCVIA compensation award which had been awarded to Christopher's estate. The remaining one-half of the award was paid into the registry of the court. On March 20, 1992, Ms. Hixon brought a declaratory judgment action seeking a

declaration that she was entitled to the balance of the award because Mr. Cowen had abandoned the child and had not contributed any financial support. She alleged that Mr. Cowen had no right to the award. In his answer, Mr. Cowen admitted he was Christopher's father and denied he had abandoned the child. He requested that the court grant a declaratory judgment that he was entitled to one-half of the NCVIA recovery.

Both parties moved for summary judgment. The court concluded that the NCVIA award was an asset of Christopher's estate to be distributed in accordance with the laws of the State of Washington. The court granted Ms. Hixon's motion for summary judgment. It concluded that Mr. Cowen's failure to establish his paternity prior to Christopher's death was fatal to the claim of paternity and any right to inherit from the child's estate. Mr. Cowen's motion for reconsideration was denied; he filed a timely notice of appeal.

## Issue

The question presented here is whether Mr. Cowen, Christopher's putative father, is entitled to a one-half share of Christopher's intestate estate even though he did not establish his paternity prior to the child's death.

## Discussion

■ The question presents an issue of law and our review is therefore de novo. *State v. McCormack*, 117 Wn.2d 141, 143, 812 P.2d 483 (1991), *cert. denied*, 502 U.S. 1111, 117 L. Ed. 2d 453, 112 S. Ct. 1215 (1992). The net estate of a person dying intestate, without surviving issue, is to be distributed to the "parent or parents who survive the intestate". RCW 11.04.015(2)(b).[1] The laws of descent and distribution, however, do not address the issue of whether a putative father, who has not established paternity prior to the child's death,

---

[1]That statute provides:

"The net estate of a person dying intestate, or that portion thereof with respect to which the person shall have died intestate, . . . shall be distributed as follows:

". . . .

may inherit from that child's estate pursuant to RCW 11.04.015.

The Uniform Parentage Act (UPA), RCW 26.26, however, addresses in some detail those issues related to parentage and the establishment of paternity. And the propriety of resolving paternity issues in accordance with the UPA, in the context of a probate proceeding, has been recognized. In *McKinnon v. White*, 40 Wn. App. 184, 193, 698 P.2d 94, *review denied*, 103 Wn.2d 1042 (1985), we held that:

> the probate code, RCW 11.02.010, and the UPA, RCW 26.26.080(1), can be construed together and harmonized, since the first allows the probate court authority to "do all things proper or incident to the exercise of" its jurisdiction, and the second allows the court to join a paternity action with any other civil action.

We therefore turn to the provisions of the UPA for an answer to the issue presented here. In doing so, we read the UPA in a manner consistent with its purpose and therefore the intent of the Legislature. *Anderson v. Morris*, 87 Wn.2d 706, 716, 558 P.2d 155 (1976); *see In re Williams*, 121 Wn.2d 655, 663, 853 P.2d 444 (1993).

Turning first to the purpose of the UPA, we observe that its primary goal is the equalization of the rights of all children whether born legitimate or not. Sheila A. Malloy, Comment, *Washington's Parentage Act: A Step Forward for Children's Rights*, 12 Gonz. L. Rev. 455, 456 (1977). The statutory provisions implementing this goal focus on the identification of a parent, establishment of a legal relationship with both parents, and recognition of the child's right to support:

> The Act's purpose of giving full equality to all children by recognizing their right to parental support and their legal relationship with both parents, is to be achieved by determining

---

"(2) . . . The share of the net estate not distributable to the surviving spouse, or the entire net estate if there is no surviving spouse, shall descend and be distributed as follows:

". . . .

"(b) If the intestate not be survived by issue, then to the parent or parents who survive the intestate."

the identity of the parent against whom *the child's rights* may be asserted.

(Footnotes omitted. Italics ours.) 12 Gonz. L. Rev. at 457. The purpose of the UPA is to further the interests of children, not their putative parents. *See Hayward v. Hansen*, 97 Wn.2d 614, 617, 647 P.2d 1030 (1982) (intention is to protect child's right to support and determination of parentage). With this purpose in mind, we now turn to the pertinent provisions of the UPA.

RCW 26.26.090(1)[2] provides that: "The child *shall* be made a party to the action [to establish paternity]." The requirement that a child be made a party to the action is jurisdictional. *In re Burley*, 33 Wn. App. 629, 633-34, 658 P.2d 8 (minor child is an indispensable party to any action under RCW 26.26), *review denied*, 99 Wn.2d 1016 (1983).[3] Although RCW 26.26.090(1) provides that the child may be represented by a general guardian or a guardian ad litem appointed by the court, it makes no provision for a substitution for the child by a personal representative if the child is deceased. This is in contrast to RCW 26.26.080(3)[4] which provides that a child may bring an action pursuant to the UPA against the estate of a putative father if his or her father is deceased. Consequently, because Christopher cannot be made a party to the paternity action, Mr. Cowen may not establish paternity after the child's death.

---

[2]That statute provides:

"The child shall be made a party to the action. If the child is a minor, the child shall be represented by the child's general guardian or a guardian ad litem appointed by the court subject to RCW 74.20.310. The child's mother or father may not represent the child as guardian or otherwise. The natural mother, each man presumed to be the father under RCW 26.26.040, and a man or men alleged to be the natural father shall be made parties or, if not subject to the jurisdiction of the court, shall, if possible, be given actual notice of the action and an opportunity to be heard in a manner as the court may prescribe."

[3]This is also the rule in other jurisdictions. *Perez v. Department of Health*, 71 Cal. App. 3d 923, 138 Cal. Rptr. 32 (1977); *In re Marriage of Burkey*, 689 P.2d 726 (Colo. Ct. App. 1984); *Hadland v. Schroeder*, 326 N.W.2d 709 (N.D. 1982).

[4]That statute provides:

"The action may be brought in the county in which the child or the alleged father resides or is found or, *if the father is deceased*, in which proceedings for probate of his estate have been or could be commenced." (Italics ours.)

Mr. Cowen argues that his action to establish paternity may be brought at any time, even after Christopher's death. He relies on the language of RCW 26.26.060(1)(a): "a man . . . alleging himself to be the father . . . may bring an action *at any time* for the purpose of declaring the existence or nonexistence of the father and child relationship." (Italics ours.) But this language must be read consistently with RCW 26.26.090(1) which, as noted, requires that the child be made a party to the action.[5] *Anderson*, at 716; *Snohomish Cy. Imp. Alliance v. Snohomish Cy.*, 61 Wn. App. 64, 74, 808 P.2d 781 (1991) (it runs counter to legislative intent to hold that what is permitted in one statute can be said to violate another statute). When both provisions are read together in the light of the purpose of the UPA, a paternity action may be brought at "any time" as long as the child can be "made a party to the action" — that is, before he or she dies. RCW 26.26.060(1)(a), .090(1).

Here, Mr. Cowen did not establish paternity prior to Christopher's death; as we read the UPA, his claim of paternity necessarily fails.

The decision of the trial court is affirmed.

MUNSON and SCHULTHEIS, JJ., concur.

---

[5]The trial court here determined that RCW 26.26.060(1)(a) does not authorize or allow an action to be brought *after* the child has died. The court held that such an interpretation would be inconsistent with RCW 26.26.090(1) and case law requiring that the child "shall" be made a party to the action.