56 P.3d 1003 (2002)
In re the PARENTAGE OF Regina Marie CALCATERRA, Appellant, and
John Manfra, Alleged Father, Respondent.
No. 49066-4-I.
Court of Appeals of Washington, Division 1.
October 28, 2002.
*1004 Ralph W. Moldauer, Lawrence, Moldauer & Marshall, Bellevue, WA, for Appellant.
Christopher E. Fletcher, Attorney At Law, Blaine, WA, for Respondent.
GROSSE, J.
Under the Uniform Parentage Act,[1] establishing a father-child relationship does not depend on the minority of the child. A child has a constitutionally protected interest in an accurate determination of paternity. The statute and the case law preserve the right of a child of any age, who alleges sufficient underlying facts, to seek a determination of the existence of a parental relationship. Reversed and remanded.

FACTS
Regina Marie Calcaterra was born in New York on November 9, 1966. Her birth certificate identifies her mother as Camille Diane Calcaterra. No father is identified on the birth certificate. However, Regina Calcaterra believes that John Manfra is her biological father.[2] Manfra now lives in Whatcom County, Washington.
There was a time during her teenage years when Regina Calcaterra sought information about, and from, Manfra, but she did not commence an action to determine paternity until she was 34 years old. This was shortly after her mother died. Calcaterra does not allege that Manfra is her "presumed father,"[3] but seeks a determination that Manfra is her natural father. She does not seek past or future support, but desires to know the medical history of her natural father and his family, if indeed Manfra is her natural father. She does not present any evidence of immediate medical necessity.
Calcaterra sought deoxyribonucleic acid (DNA) testing to establish paternity. Manfra *1005 objected and opposed testing. Over this objection, a court commissioner granted Calcaterra's motion and ordered DNA testing. Manfra sought revision of the commissioner's order to the trial court. After a hearing, the trial court vacated the order, denied the motion for paternity testing, and dismissed the case.
The trial court acknowledged that on appeal this court might rule in a one-sentence opinion that the statute states that a child alleging sufficient facts, at any age, at any time, and anywhere, can force a DNA test on an individual to attempt to establish parentage. But the trial court determined that the term "child" is more complicated than mere biology and must be considered in reference to the context of, and reasoning for, the statute. The trial court held that under the facts presented there were no compelling reasons to order the testing. While recognizing that Calcaterra would like to know the identity of her father, the trial court determined there was no reason in a monetary support or current health sense to order any test to determine paternity. The trial court found that the Uniform Parentage Act was clearly drafted and adopted for support or health needs to benefit children only during their minority, as well as for the people who care for children, and in some regard the State. The trial court held that the statute provided a mandate for the health and welfare of minor children from parents only while the child is in his or her minority. Here, the trial court held that Calcaterra as an adult child, well beyond the age of majority, or even beyond the five-year look back period of the child support statutes,[4] did not fall into the scheme of the Uniform Parentage Act and denied the requested DNA testing. Calcaterra appeals.

DISCUSSION
Calcaterra's action was filed under a prior version of the Uniform Parentage Act as adopted in Washington. Former RCW 26.26.060(1)(a) provided as follows:
A child, a child's natural mother, a man alleged or alleging himself to be the father, a child's guardian, a child's personal representative, the state of Washington, or any interested party may bring an action at any time for the purpose of declaring the existence or nonexistence of the father and child relationship.
(Emphasis added.) The statute did not contain a definition of the word "child."[5]
Turning to the provisions of the Uniform Parentage Act, this court must read the statute in a manner consistent with its purpose and the intent of the Legislature.[6] The primary goal of the Uniform Parentage Act is the equalization of the rights of all children whether born legitimate or not.[7] The statutory provisions implementing the goal focus on the child's rights to identification of a parent, establishing a legal relationship with both parents, and the recognition of a child's right to support. "The purpose of the [Uniform Parentage Act] is to further the interests of children, not their putative parents."[8] In addition, a child has a constitutionally protected interest in an accurate determination of paternity.[9]
*1006 There is no limitation period applicable to RCW 26.26 when the objective is to establish parentage.[10] The statute and the case law preserve the right of a child or an interested party to seek declaratory relief establishing the existence of a parental relationship at any time.[11] In Gonzales v. Cowen, the court noted that a different statutory section, former RCW 26.26.090(1), set forth who may be parties to an action under the Uniform Parentage Act and includes the wording, "If the child is a minor, the child shall be represented by the child's general guardian...." Thus, the statutory language indicates legislative awareness of the fact that a child may not be a minor when an action is brought.
Under the Uniform Parentage Act, Calcaterra has a right to seek genetic testing if her petition is sufficiently supported by facts establishing a reasonable probability of the requisite sexual contact between the individuals. A review of the documents, including the declarations of Calcaterra, her sister, and Manfra's sister-in-law regarding the alleged father, indicates the likelihood that Manfra is at the very least an alleged or putative father. The act requires that testing go forward to assist in making a proper determination of parentage.
The inclusion of the phrase "at any time" shows the intent of the Legislature. In adopting the Uniform Parentage Act, the Legislature balanced the interests of the child against those of a putative parent. While Manfra's right to privacy is an interest affected by an order compelling DNA or blood tests,[12] that right is not absolute. The State may reasonably regulate this right if it has a compelling interest.[13]
The privacy invasion of a DNA test is minor. Even if it is determined that Manfra is the father of Calcaterra, there are admittedly no child support issues, and he can disinherit Calcaterra if he so chooses. Manfra's psychological well-being does not outweigh the interests of a child.
The decision of the trial court is reversed and the matter remanded for action consistent with this opinion.
APPELWICK and BAKER, JJ., concur.
NOTES
[1] The Uniform Parentage Act was amended and updated by the Legislature effective June 13, 2002. For purposes of this opinion, we will be referring to the former act.
[2] The declarations of Regina Calcaterra, her sister, and John Manfra's sister-in-law indicate that Camille Calcaterra was in love with John Manfra and had a child (Regina) by him. Camille had a difficult time coping with Manfra's departure which resulted in abuse and abandonment of her children. Regina and her sister acknowledge their information is based on information from their mother who died in 1999. Regina Calcaterra's affidavit also sets forth her version of the previous discussions between John Manfra and herself.
[3] See former RCW 26.26.040, presumption of paternity. Calcaterra does not allege that Manfra fits any of the statutory presumptions listed in the statute, and in fact indicates in her petition that the presumption does not apply.
[4] Although finding that the five-year look back time limit exception of former RCW 26.26.134 pertains to support orders, the trial court noted that the limitation for the establishing or enforcement of back support reinforces its decision that Calcaterra's petition is too late.
[5] The more recent version of the Uniform Parentage Act includes a definition of "child." This version was adopted by the Legislature and became effective June 13, 2002. "Child" is defined as "an individual of any age whose parentage may be determined under this chapter." RCW 26.26.011(5).
[6] Anderson v. Morris, 87 Wash.2d 706, 716, 558 P.2d 155 (1976); Gonzales v. Cowen, 76 Wash. App. 277, 281, 884 P.2d 19 (1994).
[7] Gonzales, 76 Wash.App. at 281, 884 P.2d 19 (citing Sheila A. Malloy, Comment, Washington's Parentage Act: A Step Forward for Children's Rights, 12 Gonz. L.Rev. 455, 456 (1977)).
[8] Gonzales, 76 Wash.App. at 282, 884 P.2d 19 (citing Hayward v. Hansen, 97 Wash.2d 614, 617, 647 P.2d 1030 (1982)).
[9] State ex rel. McMichael v. Fox, 132 Wash.2d 346, 352-53, 359, 937 P.2d 1075 (1997) (citing State v. Santos, 104 Wash.2d 142, 146-47, 702 P.2d 1179 (1985)).
[10] State ex rel. O'Brien v. Cooperrider, 76 Wash. App. 699, 702, 887 P.2d 408 (1994).
[11] Gonzales, 76 Wash.App. at 283, 884 P.2d 19; former RCW 26.26.060(1)(a).
[12] State v. Howe, 44 Wash.App. 559, 565, 723 P.2d 452 (1986) (citing State v. Meacham, 93 Wash.2d 735, 737-38, 612 P.2d 795 (1980)).
[13] Howe, 44 Wash.App. at 565, 723 P.2d 452 (citing Meacham, 93 Wash.2d at 738, 612 P.2d 795).